## The People on the relation of Nathan Shumway and others v. Davis D. Bennett.

*Village incorporation act : Legislative functions : Abdication : Compulsory incorporation : Boundaries : Farming lands : Public agencies.* The general village incorporation act of 1873 (*Sess. L. 1873, p. 368*) is held unconstitutional, for the reason that it, in effect, delegates to private citizens the legislative function of fixing boundaries and compelling the incorporation of separate villages and intervening farming lands, against consent and without any opportunity for hearing ; the legislature cannot abdicate its functions, or subject citizens and their interests to the interference of any but lawful public agencies.

*Compulsory incorporation : Legislative action : Delegated authority.* A compulsory incorporation can only come from direct legislative action, or the action of such persons or bodies as may, by the law of the land, be vested with sufficient delegated authority to bind the community.

    The limitations to this compulsion, under the precedents of the common law of England and the usages of various states in this country, considered.

*Municipal incorporation : Hearing : Boundaries.* An opportunity ought to be provided of being heard in every step of proceedings which determine the liability of individuals to be included in particular municipalities ; and one of the most vital questions involved is that of boundaries ; and its determination belongs to policy, rather than law, and is political, and not judicial.

*Incorporating villages : General statutes : Conditions : Restrictions.* The history of the system of incorporating villages and cities under general statutes, and the conditions and restrictions generally imposed upon the power conferred, and the principles that govern them, considered.

. Shumway v. Bennett.

*Judicial action: Legislative action: Administrative action.* The distinction pointed out between judicial action and legislative and administrative action.

*Judicial power.* The power of determining upon the propriety of incorporating certain territory into a new municipality, and of fixing the boundaries of municipal corporations, is not, in a legal sense, judicial power.

*Delegated authority: Implications: Incorporating villages: Farming lands.* The power to enforce incorporation upon farming lands which are sparsely settled, if it can be delegated at all, must be given expressly, and will *not* be implied against private consent; the power is strictly construed; and the same is true of compelling the fusion of distinct villages without joint consent.

*Judicial action: Process: Notice: Hearing.* If the proceedings under this statute could be treated as judicial action, the act would be equally defective, since there is no provision for any process or notice to subject parties interested to the jurisdiction, or for affording them any effective hearing if notified.

*Constitutional law: Incorporating villages.* Whether under our constitution, a village lying partly in different towns and counties can, either by direct action or under delegated authority, be incorporated as a unit :—*Quære ?*

*Judicial notice: Provision for public information.* Where judicial notice is required to be taken of organizations incorporated under a general act, some means of public information should be provided.

*Defective legislation.* A defect is pointed out in the statute, in that it makes no provision for again appointing the first election in case of a failure to hold it at the time first appointed.

*Heard May 13.   Decided July 8.*

Information in the nature of a *quo warranto.*

*Isaac Marston, Attorney General,* and *C. A. & S. C. Stacey,* for the relators.

*Walker & Weaver,* for the respondent.

CAMPBELL, J.

This is a proceeding to inquire by what warrant the respondent claims to exercise the office of president of the village of Fairfield in Lenawee county, Michigan.

The controversy is concerning the legal existence of that village, which was organized in December, 1873, under the village act of 1873.

The proceedings ( except in one or two points ) appear affirmatively to have followed the forms indicated by the act.   Thirty-four petitioners applied to the judge of the circuit court for Lenawee county, November 10, 1873, describing a tract of land in the township of Fairfield, con-

taining one thousand and forty acres, or less than two square miles, and showing the number of inhabitants therein to be three hundred and sixty-two. Upon this showing they prayed that it might be submitted to the legal voters, whether a village to be called Fairfield should be organized.

The judge entered an order for an election to be held in the Masonic Hall in the township of Fairfield (on said territory), on the first day of December, 1873.

Notices were posted up by the county clerk in upwards of ten public places (although not certified to be ten of "the most public places") in the territory, and the election showed sixty-five ballots for, and twenty-six against the corporation.

The judge, upon the return of these facts, declared the result favorable, and ordered the first election of the new corporation to be held December 29, 1873, at which time respondent was elected.

It appears from the facts agreed upon in the case before us, that there were two clusters of houses in the district at its respective ends,—one called Baker's Corners, or Fairfield, containing about four-fifths of the inhabitants, and the other a railway station called Jasper, containing about one-fifth. These settlements cover not far from forty acres. The remaining lands, of about one thousand acres, are farming lands. The inhabitants of Jasper, and most of the farm owners, are opposed to the incorporation. No notice was given of an intention to apply for it, and no one had an opportunity of being heard on the subject. All of the election notices were posted in the Baker's corners settlement, a mile from Jasper.

As the statute provides for no evidence of posting except the clerk's certificate, that must be in full compliance with law. As he did not certify that the places chosen were among the most public places in the district, it is questionable whether the omission is not one of substance. As a matter of fact it is likely that the railway station is a more public place than some, at least, of those certified,

and if the facts were open to a hearing, the failure to post any notices in Jasper could hardly be explained away. But the case was not argued upon this point, and the other questions go to the whole merits.

The proceedings are assailed as fatally invalid, and the law is objected to as not conforming to the constitution. The important objections seem to be, that the proceedings are adverse, and wrongfully bring farming lands and separate villages together without consent, that no hearing is had where the propriety of boundaries or of any of the measures proposed can be disputed, and that the authority to carry out the business cannot be lawfully given to the court or judge.

The machinery for organizing villages and similar municipal corporations is not uniform, but is found modified in different states and countries by local usage. There are, however, some generally recognized principles which are never lost sight of. The most important, perhaps, is the fundamental rule, that, while the law may extend great facilities to persons and communities desirous of becoming incorporated, yet a compulsory incorporation can only come from direct legislative action, or the action of such persons or bodies as may by the law of the land be vested with sufficient delegated authority to bind the community. There are few if any acts of state, bearing upon individuals, more important than those which determine their liability to be included in particular municipalities; and the cases are very rare in which they have not been allowed an opportunity of being heard in every step of the proceedings.

It is manifest that one of the first and most vital questions involved is that of boundaries. It may be too plain for dispute that certain lands are so occupied as to require corporate organization for their convenient government. There may be, for example, in any township, a small region densely inhabited with more people than all the rest. Any question on which they unite could be carried by their votes at a township election. But it would be tyrannical

to allow them to determine for themselves what property should be made tributary to their local interests, in which the rest of the town had no concern. That question should be decided on its own merits by an authority so constituted as to be presumably impartial, and such a determination, wherever made, belongs to policy rather than law, and is political, and not judicial. Any confusion which has been discovered in the authorities has arisen from the use of the term "judicial" in more than one sense, and in applying it sometimes to all acts involving discretion and judgment, instead of confining it to the "*judicial power*" which belongs to courts of justice, and relates to controversies on questions of public or private right.

As no one can be compelled against his will to become a member of a private corporation, or subject to its control, the legislature can prescribe such conditions as they deem most desirable, as the terms on which private corporations may be formed; and can entrust any functions in relation to such incorporation to such persons as they may designate, unless there is some constitutional limitation on the authority which may be so vested. The acceptance of a charter being the voluntary act of the persons incorporated, they can never be legally aggrieved by it.

But it seldom, if ever, happens that all the inhabitants of a precinct desire to accept a new political bond; and while the private will may be lawfully subjected to the public will, it cannot lawfully be bound unless by the action of those who are invested with valid authority of compulsion. And in a constitutional government, there are some restrictions which will prevent the delegation of such authority indefinitely, or to all persons. The common law, in England, and the usages of various states in this country, furnish precedents for determining with more or less precision, under what conditions this compulsion may be exercised.

It is said to have been a settled principle at common law that the king had a prerogative right to grant char-

ters, municipal as well as private. But this was nothing more nor less than a prerogative to confer privileges. It did not involve a power to impose political obligations unless by way of condition. He could not compel the acceptance of any charter.—*City of Paterson v. Society, etc., 4 Zab., 385, citing 1 T. R., 572; Willcock on Mun. Corp., 30.*

And as acceptance was necessary to make the king's charter operative, it will be found that the municipal charters which he gave were all given to existing communities, having a recognized and organized existence, and in the habit of acting as one body, through elections or agencies and officers. So far as we can judge from history, they were to all intents and purposes already as complete corporations for all practical purposes, as our simpler municipal bodies, and accustomed to what was practically corporate action, and known as *quasi* corporations. But even these could get nothing from the royal grant but liberties or franchises. Any coercive or exclusive power, which by the principles of the common law could not be granted by the king's charter, could only be given by act of parliament.— *1 Kyd, 61.*

The royal charters, then, were not imposed upon any one, but were merely offered for acceptance to existing communities, it being reasonably and legally implied that every person whose lot was cast in the community was, by his settlement and continuance there, made a consenting party to what was assented to by the community and suited to its circumstances. The same principle has been applied by decisions in this country, where it has been said judicially that persons who build on streets adjacent to a city, or in such compact form as involves the necessity of an analogous organization, may be fairly regarded as consenting to be incorporated by legislation, where such consent is held to be necessary,—as it seems to be so regarded in some states, which deny or qualify the power of the legislature to include absolutely or for all purposes, lands not so occupied.—*Morford v. Unger, 8 Iowa, 82; Covington v. South-*

*gate, 15 B. Mon., 498; Langworthy v. Dubuque, 13 Iowa, 86; Fulton v. Davenport, 17 Iowa, 404; Buell v. Ball, 20 Iowa, 282.*

It may be questioned whether any such difficulty can prevent the exercise of power by the legislature, whose discretion is very broad, and not usually open to controversy. But such considerations, if not restraining the power, have generally governed the policy of legislation, and have, in all cases of doubt, determined the construction of statutes. Some reference will be made to that matter hereafter. In Indiana a power is given to cities to enlarge their own boundaries, over adjacent lands which have been legally platted of record; while over lands not so platted, the power of annexation is exercised by other means.—See *Mayor of Jeffersonville. v. Weems, 5 Ind., 547; Elston v. Board of Trustees of Crawfordsville, 20 Ind., 272; Evansville v. Page, 23 Ind., 525.*

The system of incorporating villages and cities by general statutes is quite modern, and it is not singular that in the diversity of constitutions and statutes, it is not easy to find any uniform agreement as to the course to be pursued. But, with few exceptions, the common-law theory has been observed. The authority to incorporate has generally been applied to reach only those communities which have already become villages or dense settlements, and which need nothing but corporate existence to complete their character. The main inquiry, where there has been any question open in advance, has been as to the actual extent of the land so occupied, and the character of the occupation. And while there are some exceptional statutes which leave a large coercive control to the authorities vested with powers of local legislation, there are few, if any, which allow an election to be ordered, or any definite step to be taken, until all persons interested have had a chance to be heard. It needs no long consideration to see that an inquiry into the extent and character of a settlement, is a question very different in its legal bearings from questions of policy and discretion,

29 MICH.—58.

concerning the propriety of incorporation, or of compelling unwilling persons to be brought under corporate control. Most of these statutes are offers rather than compulsory laws; and in most cases the thing sought is a true expression of sentiment from a homogeneous community.

The English statute providing for local government, although adopted by a legislature of untrammeled powers, has adhered very closely to old usages. It is to be adopted in all cases by the people to be included. In corporate boroughs it is to be adopted by the council; in places under elected commissioners, by a resolution of the commissioners; in all other places having a known or defined boundary, by vote of owners and rate-payers. If a place has no known or defined boundary, the law provides means for having the boundary ascertained, upon petition for that purpose, by a commission of inquiry, under the direction of a secretary of state formerly, and now by the local government board, which is a body of large powers, having supervision of such matters. When the boundaries are fixed, the process is as in other places. But if any number not less than one-twentieth of the owners and rate-payers desire the whole or any part of the place to be excluded from the operation of the act, an inquiry is to be directed, and the matter is determined on its merits. These proceedings appear to be subject further to the supervision of the Queen's Bench by *certiorari.*—See, for decisions under the statutes, *Matlock Bath District, 2 Best & Sm., 543; Regina v. Northowram, L. R., 1 Q. B., 110; Regina v. Hardy, L. R., 4 Q. B., 117; Regina v. Local Government Board, L. R., 8 Q. B., 227.* The object of the statute is expressed in the preamble, to make provision for the local government of "towns and populous districts." It covers such places and only such places as can be easily defined by settlements, where there are not already fixed local bounds. And the authorities engaged in the inquiry are the political authorities best qualified to judge, and having full means to enable them to act discreetly and fairly.

In the United States the statutes of Pennsylvania have come before the courts oftener than any others. And it is owing, perhaps, to a misunderstanding of terms, that the action which is taken there has been spoken of as judicial action, when in fact it is administrative, and in a qualified sense legislative. Whenever an application is made in proper form to the court of quarter sessions, it is to be laid before the grand jury, who are to make full investigation, and report, not only upon the jurisdictional facts, but also upon the expediency of the incorporation. In Philadelphia a special inquest of six persons performs the same office under the act, that belongs elsewhere to the grand jury. And the same authority may upon a proper application dissolve a borough.—*Purdon's Dig.* (*Brightly's Ed.*), "*Boroughs*," § *1 to 6.*

In that state the quarter sessions and the grand juries, in addition to judicial business, transact a large share of the local business, which here belongs to the board of supervisors and other local bodies. In *Com. v. Judges of Quarter Sessions, 8 Pa. St., 391,* this very power was discussed as one of local administration. In England the quarter sessions have had powers quite analogous. The justices composing the court had individually no judicial character, —the office of conservator of the peace involving no judicial duties properly so called.—*Daniels v. People, 6 Mich., 381, and cases cited; Underwood v. McDuffee, 15 Mich., 361.* The term "court" applies as well to legislative and other collective bodies as to legal tribunals. And the local business of the sessions covered a multitude of subjects purely administrative and representative, while their actual duties as a court of law were few and limited.

In the older states the court of sessions (or in some the county court) were the representatives of the county for all general purposes. The nature of their powers has been expressly adjudicated. In *Baxter v. Taber, 4 Mass. R., 367,* it was said that these powers were granted by old provincial statutes, and that their power over jail limits ( which

was the matter there discussed) was not judicial, and not subject to judicial review. In *Hampshire v. Franklin, 16 Mass. R., 76;* and *Emerson v. Washington, 9 Greenl., 88 and 98,* are found illustrations of their powers. In Ohio the power of annexing property to municipalities is vested in the county commissioners, who have authority to exercise it *in invitum,* though provision is made for a hearing.— *Blanchard v. Bissell, 11 O. St. R., 96.* The power is justified on the ground that the legislature could do the same thing. And in *People v. Carpenter, 24 N. Y., 86,* the power of the supervisors over the same subject is held to be legislative. The powers of legislatures are by most of our constitutions confined to legislative functions, but this term is broad enough to include a great mass of political and discretionary action, which may be performed directly by the legislature, or delegated to local authorities having general or qualified control over local business. There has never been any difference of opinion about the character of the power to regulate local incorporations, as one which the legislature retains for itself, whether delegated to others also, or not. This precise question was decided in *Call v. Chadbourne, 46 Me., 206;* and in *Wolf's Appeal, 58 Pa. St. R., 471.* In *State v. Armstrong, 3 Sneed, 634,* it was held the legislature, although expressly authorized to give local powers to courts, could not empower them to grant private charters of any kind. These were judicial courts. And in *People v. Nevada, 6 Cal., 143,* it was held judicial courts could not be empowered to act in the incorporation of towns, because it was not a judicial act. This case is deserving of some consideration, from the fact, that, while in *People v. Provines, 34 Cal., 520,* the supreme court of California undertook (although in a case not calling for it) to overrule a long chain of decisions, which had held courts disqualified from receiving any but judicial powers, no fault was found with this particular decision, which the record shows could not have been overlooked. We cannot find any support for the doctrine that the power is judicial, unless in *Kay-*

*ser v. Trustees of Bremen, 16 Missouri, 88,* where a law empowering county courts to act was held valid because their action was judicial. The decision is brief, but unless their functions were peculiar, the principle of the case conflicts with the general course of decision.

It is possible, perhaps, that in such proceedings questions may arise which courts might be called on to decide judicially, and the question of jurisdiction in analogous business has very frequently been entertained on *certiorari* by some courts, while others have declined to act. Much must depend on local usage and constitutions.

This question of jurisdiction is the most important which can be raised in most cases, as it relates to the subject matter, as well as to the power of the tribunal and the conditions of its exercise. Whether the legislature can or cannot delegate power to act upon lands which are not villages in fact, though unincorporated, the courts have quite uniformly construed statutes as not implying any such power against private consent. The power is strictly construed.—*Devore's Appeals, 56 Pa. St. R., 163.* In the case of *Borough of Blooming Valley, 56 Pa. St., 66,* it was held farming lands might be included in a borough by consent, and on the application of the owners. But otherwise the village proper is all that can be included. In *Borough of West Philadelphia, 5 Watts & S., 281,* an attempt was made to incorporate together, as in this case, two village settlements and intervening farms. But the supreme court held distinctly that neither two settlements nor farming lands could be included, except by the direct action of the legislature; and referred to the injustice of compelling the fusion of distinct villages without joint consent. Although the law had been changed in some respects when the *Blooming Valley* case was decided, it remained the same in this respect.—See *Purdon's Dig., "Borough," 1 to 7.* The principle was re-asserted and further explained and enforced in *Borough of Little Meadows, 28 Pa. St., 256,* where the settlement was held too scattering to be called a village, and

affirmed in the same case on a new application.—*35 Pa. St., 335.* On a similar principle, it was held in *Osgood v. Clark, 6 Foster* ( *N. H.*), *307,* that where the law authorized the select men of the towns to fix village boundaries, they could not exclude any part of a village, but must include it all as a unit.

This question is of grave importance in any view that may be taken of the statute. If confined to actual village settlements, the law may be regarded as more directly aimed at offering privileges to substantially united communities, and the questions to be determined by any authorities administering the law would be much simpler than if it had a broader scope, and might involve the exercise of somewhat different functions. But, under any interpretation, if questions purely judicial should arise, they must be disposed of judicially, while questions not judicial must be disposed of by some other body or officers to whom such business may lawfully be delegated, or must be determined by the legislature itself. And, under any circumstances, it is essential to the legality of their decision, that the tribunal be open to all persons concerned to be heard in the way appropriate to the several tribunals, by hearing petition or remonstrance.

Applying our attention to the terms of our statute, we find them to be, in substance, complied with in most respects by the proceedings before us. They provide that any territory may be incorporated, if it shall be no more than two square miles in extent, not included in or adjacent to any incorporated city or village, and having a resident population of not less than three hundred. This language seems broad enough to cover any kind of territory, unless modified by other provisions which have not been pointed out.

The region incorporated may extend into more than one town, and more than one county.

Any number of resident legal voters not less than thirty may file a petition describing the location and boundaries,

and the number of inhabitants, and the proposed name, and asking that the question of incorporation be submitted to the resident voters. This is to be accompanied by a verified census taken within two months. This petition is to be filed in the circuit court of the county where the greater part of the *territory* is located.

The census is not taken by any public officer, nor by any legal authority; and it would be quite possible for the majority of the land, and the accordant filing of the petition, to be in a county where none of the voters reside, if farming lands may be included.

Upon receiving the petition, which is *ex parte*, the judge is required, without further inquiry or ceremony, to have entered an order in the journal, appointing a time and a place in said territory for an election. How he is to ascertain a suitable place is not declared.

The clerk is, at least two weeks before election, to post up notices in ten of the most public places in said territory, of the time and place and question to be voted on. The election is conducted in the usual way, by inspectors chosen at the time, except that all constitutionally entitled electors vote without registration. The return of votes is made to the circuit judge. If the proceedings are formal, he is then compelled to enter another order declaring the incorporation, and appointing time and place for the first village election.

In examining these proceedings the fact which is most prominent throughout is, that there is not in their whole course a single act of any importance, which is performed by any public agency whatever, whether legislative, executive or judicial. The propriety of the shape or boundaries of the proposed village is often the principal thing deemed necessary to be settled by the legislature, when it submits a charter to the popular vote—most charters being substantially alike in their scope. Under this law, a bare majority, collected, anywhere, may annex in any direction any two square miles of land, in spite of courts, supervisors and all

other public authorities. The thirty signers of the petition determine absolutely the contents of the village. They may include farming lands, or detached settlements, and they may cut settlements in two at their pleasure, and without any possible redress. The court cannot refuse to appoint a day and place of election, and this single discretionary power has no bearing on the merits. The power of the clerk, who is a mere ministerial officer, is greater than that of the court, because notices may be so posted as to give no information where it is most needed. No one has a right of hearing, and no hearing could avail if had.

It is easy to perceive how by simultaneous applications the same tract might be embraced in several petitions, and if less densely populated than the rest, might be voted into more than one village at a time. But no imaginable entanglement can work more mischief than the power of defining public corporations by private caprice, in defiance of private and public convenience.

That such an abstract power exists in the supreme legislature is generally assumed. But the conditions of public legislation are not likely to permit, and never will favor any atrocious wrong. Their sessions are open. All parts of the state are represented. Every citizen has the right of petition, and reasonable petitions are treated with proper respect. Private rights are generally safe in their hands.

But it is not in the power of a legislature to abdicate its functions, or to subject citizens and their interests to the interference of any but lawful public agencies. The judicial power must be vested in courts. Such legislative and local authority as can be delegated at all, must be delegated to municipal corporations or local boards and officers. The definition of corporate bounds is second in importance to no corporate interest whatever. If it can be delegated at all so as to include any but single settlements, it must be delegated to some body recognized by the constitution as capable of receiving such authority, and having local jurisdiction over the territory to be incorporated.

It is impossible to sustain a delegation of any sovereign power of government to private citizens, or to justify their assumption of it.

If it were possible to treat this as judicial action, it is quite as defective. There can be no such action affecting rights, which is not based upon some process or notice whereby the parties interested are subjected to the jurisdiction, and entitled to be heard. There is no rule of law which requires persons to attend and watch the action of courts, unless the legal course has been taken to warn them. And there is no principle of law which would tolerate action upon the fullest notice, where the party notified is denied a hearing. Notice is only useful to enable him to obtain a hearing.

Under this statute an election follows the petition as a matter of course. And there can be no judicial action when the party and not the court determines the question of right.

There is no possible ground for sustaining the incorporation, and there is, therefore, no such office as that assumed by the respondent.

As it is probable the statute may be amended, we deem it proper (without expressing an opinion upon points not before us) to indicate some matters which should receive attention. It is worthy of consideration, in view of the peculiar provisions of our constitution concerning elections, and concerning local authority, how far provision can be made, either by direct action or delegated authority, for the incorporation of villages as units, when lying in different towns and counties.

There is also some awkwardness in requiring judicial notice to be taken of such organizations, without providing some means of public information. The law is also obscure, if not defective, in not pointing out how the first election shall be appointed, if it is not had at the time first appointed.

29 MICH.—59.

SHUMWAY *v.* BENNETT.

These points came under notice in the examination of the parts of the statute applicable to this cause, but as they do not touch the present controversy, we merely allude to them as bearing on the completeness of the act.

Judgment of ouster must be rendered against the respondent, with costs.

The other Justices concurred.