398 SUPREME COURT OF WISCONSIN. [Feb.

State ex rel. Holland v. Lammers, 113 Wis. 398.

The State ex rel. Town of Holland and another, Appellants, vs. Lammers and others, Respondents.

*May 21—June 20, 1901.*
*February 1—February 18, 1902.*

*Municipal corporations: Villages: Incorporation: Statutes: Population: Election: Ballots: Certificate of inspectors: Presumptions: Constitutional limitations.*

1. Under sec. 854, Stats. 1898 (providing that any part of any town or towns, not less than one-half square mile in area and not included in any village and all lying in the same county, which contain a resident population of not less than 300, or any part of any town or towns, not less than one square mile in area and not included in any village and lying in two adjoining counties, "and which shall contain a resident population of at least 400 persons to every square mile thereof," may, on compliance with ch. 40, Stats. 1898, become incorporated as a village), it was attempted to incorporate a portion of a town of about two square miles, situated entirely within one county and having a resident population numbering 317. *Held*, that the modifying clause quoted relates only to situations where the territory sought to be incorporated lies in two adjoining counties, and it appearing that population, in number and in proportion to the quantity of land required, was found upon the territory sought to be incorporated, the demands of the statute had been complied with.

2. In such case the fact that there are no restrictions as to density of population, where the territory is wholly in one county, beyond the required 300, does not make the act void within the provisions of sec. 3, art. XI, Const., giving the power and making it the duty of the legislature to provide for the incorporation of cities and villages, and restricting its power in certain directions.

3. In proceedings to incorporate certain territory into a village, it appeared from the certificate of the inspectors of the election that ninety-one votes were cast by the electors of the territory. The certificate further found and determined that, upon a canvass of the votes cast, eighty ballots were given by the qualified electors resident in such territory, forty-four of which were in favor of incorporation. *Held*, in the absence of any showing to the contrary, that it will be presumed that the excess of votes over eighty were illegal and were properly rejected.

4. In such case the majority of the ballots, necessary under sec. 865, Stats. 1898, to determine the question of incorporation, must be construed to mean the majority of legal ballots cast on the question of incorporation.

5. The power to incorporate territory as a village under said sec. 854 is limited to such territory as is a village in fact, with a reasonably compact center or nucleus of population, and not a mere agricultural community. If territory beyond the thickly settled limits is included, such territory must reasonably possess some natural connection with and adaptability to village purposes, and seem reasonably necessary for future growth and development. So construed such section does not conflict with sec. 3, art. XI, Const. empowering the legislature to provide for the organization of cities and villages, nor with sec. 23, art. IV, providing that the legislature shall establish but one system of town and county government which shall be as nearly uniform as possible.

CASSODAY, C. J., dissents.

APPEAL from an order of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to determine the validity of the incorporation of the village of Cedar Grove, Sheboygan county, Wisconsin. The proceedings for incorporation were taken under secs. 854–866, Stats. 1898, having been instituted in November, 1899. The territory attempted to be incorporated comprised a portion of the town of *Holland,* about two square miles, is situated entirely within Sheboygan county, and has a population numbering 317. The grounds upon which the action is based are that the petition for incorporation did not show that the territory sought to be incorporated contained a resident population of 400 persons to the square mile, and that the certificate of the inspectors who presided at the election to determine the question of incorporation does not show that the majority of the ballots given at the meeting, had thereon the word "Yes," as required by sec. 865. The facts relating to this last contention are as follows: The certificate filed, among other things, states:

"That, as such inspectors and clerk of such meeting or election, they caused a correct poll list of such qualified elect-

ors resident in such territory as voted or exercised the fran-
chise at the election so held on that day to be made, and that
the following named qualified electors, resident in such terri-
tory, voted by ballot having thereon the word 'Yes' or the
word 'No.' "

Then follows a list of ninety-one names.   The certificate
then continues:

"That after the closing of the polls of said meeting or elec-
tion at four o'clock in the afternoon, and upon the canvass of
the ballots thrown or given at such meeting or election being
made by the inspectors and clerk thereof, it was found, ascer-
tained, and determined by said inspectors and clerk that there
were eighty ballots given or thrown at such meeting or elec-
tion, by qualified electors, resident in such territory; that a
majority, forty-four, of the ballots so given or thrown at
such meeting or election had thereon the word 'Yes,' and that
thirty-six of the ballots, a minority of the ballots so given or
thrown at such meeting or election, had thereon the word
'No.' "

The complaint set out the different steps taken in relation
to the incorporation, and concluded with a prayer that the
defendants be ousted from the offices they claimed to hold, and
that the village be declared unlawful.   The defendants united
in a demurrer based upon the ground that the complaint did
not state facts sufficient to constitute a cause of action, which
was sustained.   The relators bring this appeal.

For the appellants there was a brief by *Timlin, Glicksman
& Conway,* and oral argument by *W. H. Timlin.*   To the
point that the incorporation was invalid was cited, *People ex
rel. Johnson v. Whitney's Point,* 32 Hun, 508; *State ex rel.
Crow v. Fleming,* 147 Mo. 1; 2 Spelling, Extr. Relief,
§§ 1798–1800; *State ex rel. Ross v. Somerby,* 42 Minn. 55;
*People ex rel. Atty. Gen. v. Stanford,* 77 Cal. 360; *People
ex rel. Schindler v. Flint,* 64 Cal. 49; *People ex rel. Marshall
v. Ravenswood, H. C. & W. J. B. Co.* 20 Barb. 518; *People
ex rel. Weber v. Spring Valley,* 129 Ill. 169; *People ex rel.
Cooney v. Peoria,* 166 Ill. 517; *New Orleans D. R. Co. v.*

*Louisiana,* 180 U. S. 320; *State ex rel. Summers v. Uridil,* 37 Neb. 371; *People ex rel. Roeser v. Gartland,* 75 Mich. 143; *Territory v. Armstrong,* 6 Dak. 226; 1 Dill. Mun. Corp. (4th ed.), § 894; *State ex rel. Loy v. Mote,* 48 Neb. 683; sec. 3466, Stats. 1898; *State ex rel. Wood v. Baker,* 38 Wis. 71.

*Simon Gillen,* for the respondents.

The following opinions were filed June 20, 1901:

BARDEEN, J. Two reasons are urged why the order appealed from should be reversed: (1) The territory sought to be incorporated does not contain the requisite population; (2) it does not appear that a majority of the ballots given at the meeting of the electors to determine the question of incorporation had thereon the word "Yes," as required by sec. 865, Stats. 1898.

1. A determination of the first proposition calls for a construction of sec. 854, which reads as follows:

"Any part of any town or towns, not less than one half square mile in area and not included in any village and all lying in the same county, which shall contain a resident population of not less than three hundred persons thereon, or any part of any town or towns, not less than one square mile in area and not included in any village and lying in two adjoining counties and which shall contain a resident population of at least four hundred persons to every square mile thereof, may, upon compliance with the conditions of this chapter, become incorporated as a village . . .

The theory of relators' counsel is that a fair construction of the section requires that there should be at least 300 persons on each half square mile of territory incorporated, or that there must be at least 400 persons to every square mile thereof. To secure this construction, he insists that the words "and which shall contain a resident population of at least four hundred persons to every square mile thereof"

constitute a modifying clause, and relate to and modify both disjunctive parts of the subject. He admits the general rule that a qualifying or limiting clause in a statute is to be referred to the next preceding antecedent, but he insists that to do so in this case would violate the evident purpose of the legislature. Black, Interpretation of Laws, 150. We are not convinced that the situation demands any such forced and unnatural construction. The section as a whole seems plain and easy of interpretation. We will not attempt to defend the legislative policy therein expressed. It may be that it would have been wiser to have placed a limit upon the amount of territory that might be included in the proposed corporation, and to have enacted more definite limitations as to density of population therein; but we cannot say that the failure to do so violates any provision of the constitution, or renders the law so unreasonable as to be void. The constitution gives the power and makes it the duty of the legislature to provide for the incorporation of cities and villages, and to restrict their power in certain directions (sec. 3, art. XI), but it does not attempt to prescribe any limitations as to size or density of population. Regulations in that regard rest with the legislative branch of the government, and generally the courts must accept its will as manifested in statutes enacted covering the subject. A brief discussion of this subject may be found in *Smith v. Sherry,* 50 Wis. 210, which holds that the territory of such organizations must be contiguous. Turning now to the statute under consideration, we find that the legislature has said that any part of any town or towns lying in the same county, not less than one-half square mile in area, may be organized or become incorporated as a village, provided it shall contain not less than 300 persons thereon. If the territory lies in two adjoining counties, then it must be not less than one mile square in area, and contain a resident population of at least 400 persons to every square mile. The fact that there are no restrictions as to density of

population as to territory wholly contained in one county, beyond the required 300, does not make the act void, although it may be sufficient to impeach the legislative policy in the minds of its critics. We are unable to find any support to the theory contended for in the history of this legislation, or by reference to sec. 861. That section merely requires the court to be satisfied that the population, "in number and in proportion to quantity of land therein required" by sec. 854, is found upon the territory sought to be incorporated. He so found in this case, and thus the demands of the law have been met.

2. Counsel for the relators assumes that, because the certificate of the inspectors recites that ninety-one votes were cast by the electors of the district, the subsequent finding that only forty-four ballots had thereon the word "Yes" shows affirmatively that the majority required by sec. 865 were not in favor of incorporation. This, however, is not a fair construction of the certificate. The first statement is but a recitation of the number of voters who exercised the privilege of voting. That which follows is the finding and determination of the inspectors upon the canvass of the votes cast. They definitely find that eighty votes were cast, forty-four of which were in favor of incorporation. In absence of allegation to the contrary, we must assume that the excess of votes over eighty were rejected for some valid reason. The law makes the regulations applicable to the election of town officers and the canvass of votes at a town meeting apply to such an election. If any of the ballots cast were illegal, as where several are folded together, it was their duty to reject them. The presumption is that they performed their duty according to law. So, when they found and determined that there were only eighty ballots cast, we must assume that the excess were illegal and properly rejected. The finding must prevail over the recitation of fact, and the integrity of the election be sustained, unless impeached upon some legal

grounds. The majority of the ballots necessary under sec.. 865 to determine the question of incorporation must be construed to mean the majority of the legal ballots cast on the proposition. Such was long ago established as the rule at the election of officers (*State ex rel. Holden v. Tierney,* 23 Wis. 430), and nothing is apparent in the section referred to to indicate that a different rule should be applied to the situation under consideration. The majority required is not of those who vote or attempt to vote, but a majority of the legal ballots cast, as shown by the canvass of the inspectors. The record showing such majority to be in favor of the project of incorporation, it must stand until overturned or impeached in a proper way.

*By the Court.*—The order appealed from is affirmed.

CASSODAY, C. J. Sec. 854, Stats. 1898, is copied into the opinion of my brother BARDEEN in this case. That section is a literal copy of sec. 7, ch. 287, Laws of 1897. It provides for the incorporation of two classes of villages; the first containing "not less than one-half square mile in area . . . and all lying in the same county," and the second containing "not less than one square mile in area . . . and lying in two adjoining counties." The precise question presented is whether the words which follow relate back and qualify the first class as well as the second class. Such qualifying words are as follows:

"And which shall contain a resident population of at least four hundred persons to every square mile thereof, may, upon compliance with the conditions of this chapter, become incorporated as a village," etc.

Unless it does so relate back to the first class, it is obvious that, by the terms of that section, the only limitation on the area of a village where all the territory is situated in the same county is that it shall not be less than half a square mile, and the only condition as to population is that it shall

contain not less than 300 resident population. In other words, if it contains 300 resident population, it may include any number of square miles of territory, provided only that such territory is all included in the same county. Such an absurd result should not be sanctioned unless the language of the statute imperatively requires it. If the language of the statute is fairly open to construction, then the words "a resident population of at least 400 persons to *every* square mile thereof" should apply to the first class, where the territory is all in the same county, as well as to the second class, where the territory is "in two adjoining counties." Certainly the reason for the one is just as persuasive as it is for the other. It is a cardinal rule of construction that words are to be interpreted with reference to the general scope and object of the statute. Thus, it has been held by the highest court in England:

"Where the main object and intention of a statute are clear, it must not be reduced to a nullity by the draftsman's unskillfulness or ignorance of law, except in the case of necessity or the absolute intractability of the language used." *Salmon v. Duncombe,* 11 App. Cas. 627, followed in *Manitowoc Co. v. Truman,* 91 Wis. 12; *Somo L. Co. v. Lincoln Co.* 110 Wis. 286; *State v. Shove,* 96 Wis. 9.

In this last case the language of a leading case in New York (*Coster v. Lorillard,* 14 Wend. 297) is quoted, as follows:

"In construing statutes, the usual and proper mode is to ascertain the intention of the legislature from the language they have used, connected with the state of the law on the same subject *anterior to the passage of the statute.* When the courts know for what particular mischief the legislature intended to provide a remedy, it is their duty so to construe the statute as most effectually to suppress the mischief and advance the remedy."

So it was held in this state thirty years ago:

"The true rule for the construction of statutes is to look to the whole and every part of the statute, and the apparent

intention derived from the whole, to the subject-matter, to. the effects and consequences, and to the reason and spirit of the law, and thus to ascertain the true meaning of the legislature, though the meaning so ascertained may sometimes. conflict with the literal sense of the words." *Harrington v. Smith*, 28 Wis. 43, followed in *State ex rel. Heiden v. Ryan*, 99 Wis. 128.

"Where the intent of a statute is manifest, effect should be given to that, rather than to the letter." *Haentze v. Howe*, 28 Wis. 293.

So it is said to be "a fundamental rule in the construction of statutes so to interpret their language, if possible, as to. give them some force and effect; and, where the construction is elliptical, the words which are obviously necessary to complete the sense will be supplied." *Nichols v. Halliday*, 27 Wis. 406.

By examining the prior legislation on the subject, and keeping in mind the object thereby sought to be attained, the construction of the statute in question would seem to be very plain. For many years there was no authority to incorporate a village upon territory of two adjoining counties.. Thus, the statutes of 1849 declared:

"Any part of any town or towns, not included within any incorporated village, and containing a resident population of · not less than three hundred persons, and if it shall include within its boundaries a territory of more than one.square mile· in extent, containing a resident population of at the rate of not less than three hundred persons to *every square mile* of territory included within such boundaries, may be incorporated as a village under the provisions of this chapter." Sec. 1, ch. 52, R. S. 1849.

The same section was carried forward into the Revised Statutes of 1858 (ch. 70, sec. 1). The statute of 1872 provided that no village should be incorporated which contained less than five hundred resident population, and that if it. should include within its boundaries a territory of more than one square mile, then it should contain "a resident popula--

tion of not less than three hundred persons to *every square mile* of territory included within such boundaries." Sec. 1, ch. 188, Laws of 1872. The revision of 1878 declared:

"Any part of any town or towns not less than one square mile in area, and not included in any village, and all lying in the same county, which shall contain a resident population of at least five hundred persons, and not less than three hundred persons to *every square mile* thereof, may . . . become incorporated as a village," etc. Sec. 854, R. S. 1878.

In 1880 that section was amended so as to read:

"Any part of any town or towns not less than one square mile in area and not included in any village, and lying in the same county, *or in two adjoining counties,* which shall •contain a resident population of at least four hundred persons, and not less than three hundred persons to *every square mile* thereof, may . . . · become incorporated as a· village," etc. Sec. 1, ch. 203, Laws of 1880.

That was the first attempt to authorize the incorporation of a village "in two adjoining counties." In the following year the legislature professed to amend that section by striking out the words "one square mile," and inserting in place thereof the words "one-half square mile," but added "so that said section will read as follows" (sec. 854):

"Any part of any town or towns not less than one-half square mile in area, and not included in any village, and all lying in the same county, which shall contain a resident population of not less than three hundred persons thereon, may ·. . . become incorporated as a village," etc. Ch. 92, Laws of 1881.

Whether that operated to repeal the former statute on the subject, not therein re-enacted, it is unnecessary here to determine, since it is obvious that by sec. 7, ch. 287, Laws of 1897, the legislature intended to revive, re-enact, and continue all the essential provisions of sec. 854, R. S. 1878, as amended by ch. 203, Laws of 1880. True it allowed a village of "not less than one-half square mile in area," where the territory was all in the same county, instead of "one square

mile," but it revived and continued the authority to incorpo-
rate a village "not less than one square mile in area  .  .  .
lying in two adjoining counties." In the act of 1880 there
is no room for doubt but that the qualifying words, "which
shall contain a resident population of at least four hundred
persons, and not less than three hundred persons *to every
square mile thereof,"* applied not only to a proposed village
"in two adjoining counties," but also to a proposed village in
one county. Why should not the qualifying words found in
sec. 7, ch. 287, Laws of 1897, "which shall contain a resident
population of at least four hundred persons to *every square
mile* thereof," also apply to a proposed village wholly in one
county, as well as to a proposed village "in two adjoining
counties"? The words, "may, upon compliance with the con-
ditions of this chapter, become incorporated as a village,"
which immediately follow, certainly do relate back to a pro-
posed village wholly in one county, as well as to a proposed
village in two adjoining counties. The reason for holding
that such qualifying words do relate back to a proposed vil-
lage in one county is equally potent. True, the arrangement
of the words employed, and the punctuation, are not as well
calculated to secure such construction as they might have
been. But punctuation is not to be regarded in construing
a statute. *Browne v. Turner,* 174 Mass. 150; *In re Gyger's
Estate,* 65 Pa. St. 311. In this last case it was held:

"In construing a statute, the plain, common-sense interpre-
tation of the words should be adhered to, rather than to apply
refined technical rules of grammar."

See, also, Sedgwick, Construction of Stat. & Const. Law
(2d ed.), 225.

"The correct rule of interpretation is," said Mr. Justice
WAYNE, speaking for the whole court, "that, if divers statutes
relate to the same thing, they ought all to be taken into con-
sideration in construing any one of them; and it is an estab-
lished rule of law that all acts *in pari materia* are to be taken
together, as if they were one law. If a thing contained in a

subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute; and, if it can be gathered from a subsequent statute *in pari materia* what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute." *U. S. v. Freeman,* 3 How. 564, 565.

In another case in the same volume it is held:

"In affirmative statutes, such parts of the prior as may be incorporated into the subsequent statute, as consistent with it, must be considered in force." *Daviess v. Fairbairn,* 3 How. 636.

In this state the rule seems to be well settled that where a statute has been repealed, and then wholly or partially re-enacted, such re-enacted portion of the statute will be regarded as a continuation of the old statute. *Fullerton v. Spring,* 3 Wis. 667; *Laude v. C. & N. W. R. Co.* 33 Wis. 640; *Glentz v. State,* 38 Wis. 549; *Scheftels v. Tabert,* 46 Wis. 439; *Gilkey v. Cook,* 60 Wis. 133; *State ex rel. Rochester v. Board of Sup'rs of Racine Co.* 70 Wis. 543; *Cox v. North Wisconsin L. Co.* 82 Wis. 141. In view of the several provisions of the statutes cited, it seems to me to be in violation of the rules of construction quoted to hold that a village may be created with a resident population of only 300 persons, scattered over several square miles of territory, provided it is all in one county, but, if the territory is in two adjoining counties, then it must "contain a resident population of at least four hundred persons to *every square mile* thereof." But there is another reason why sec. 854, Stats. 1898, should be construed as I have contended; and that is that sec. 14, ch. 287, Laws of 1897, copied into sec. 861, Stats. 1898, provides:

"If the court, after such hearing, shall be satisfied of the correctness of any such *survey or resurvey and census,* that all the requirements of the statutes have been complied with, *and that such territory* as is proposed to be included *con-*

*tained,* at the time such census was first or subsequently taken, *the population in number and in proportion to the quantity of land therein required in sec. 7* [*sec. 854, Stats. 1898*] *of this act,* it shall make an order declaring that such territory . . . shall be an incorporated village," etc.

Such language is appropriate when applied to a proposed village in two adjoining counties, but is without significance when applied to a proposed village with one, two, three, or more square miles of territory, all situated in the same county, as construed by the majority of the court; but with the qualifying words, "which shall contain a resident population of at least four hundred persons *to every square mile thereof,*" applied to such proposed village, situated wholly in one county, it is significant and harmonious.

A motion for a rehearing was granted September 24, 1901, and the cause was re-argued February 1, 1902.

For the appellants there was a brief by *Timlin, Glicksman & Conway,* and oral argument by *W. H. Timlin.* They contended, *inter alia,* that sec 3, art. XI, Const., taken in connection with sec. 23, art. IV, thereof, prohibits the legislature from enacting any law whereby, without any distinction based on density of population or other substantial basis of classification, the inhabitants of any area may at will remain under the town government or come in under the village government. *C. & N. W. Ry. Co. v. Oconto,* 50 Wis. 189; *Enterprise v. State ex rel. Atty. Gen.* 29 Fla. 128; *State ex rel. Shumway v. Bennett,* 29 Mich. 451; 1 Dill. Mun. Corp. (4th ed.), § 183; Fleta, Lib. 6, Cap. 51; Co. Litt. 115*b;* 1 Bl. Com. 115; *Enfield v. Jordan,* 119 U. S. 684; *Russell v. Detroit Mut. F. Ins. Co.* 80 Mich. 407; *Borough of West Philadelphia,* 5 Watts & S. 281; Cooley, Const. Lim. (5th ed.), 78 (notes 2, 3), 210, 211; *State ex rel. Childs v. Minnetonka,* 57 Minn. 526; *State ex rel. Childs v. Fridley Park,* 61 Minn. 146; *State ex rel. Hammond v. Dimond,* 44 Neb. 154; *State ex rel. Loy v. Mote,* 48

Neb. 683; *Page v. Allen,* 98 Am. Dec. 272; *State ex rel. La Valle v. Sauk Co.* 62 Wis. 376; *Rooney v. Milwaukee Co.* 40 Wis. 23; *State ex rel. McCurdy v. Tappan,* 29 Wis. 664; *State ex rel. Walsh v. Dousman,* 28 Wis. 541; *State ex rel. Keenan v. Milwaukee Co.* 25 Wis. 339; *State ex rel. Peck v. Riordan,* 24 Wis. 484; *State ex rel. Atty. Gen. v. Boyd,* 19 Nev. 43; *Singleton v. Eureka Co.* 22 Nev. 911; *Bloss v. Lewis,* 109 Cal. 493; *McClesky v. State,* 4 Tex. Civ. App. 322; *County Comm'rs v. Bladensburg,* 51 Md. 465; *State v. Eidson,* 76 Tex. 302; *Judd v. State,* 62 S. W. Rep. 543.

For the respondents there was a brief by *Simon Gillen,* attorney, and *Burr W. Jones,* of counsel, and oral argument by *Mr. Gillen* and *Mr. Jones.*

The following opinions were filed February 18, 1902:

BARDEEN, J.    A rehearing of this action was granted, and the argument was limited to the question of the constitutionality of sec. 854, Stats. 1898.    Under the construction we have given this section, "any part of any town or towns" not less than one-half square mile in area, not included in any village, lying all in the same county, and having a resident population of not less than 300 persons thereon, may become incorporated.    The law, as thus construed, is attacked, because sec. 3, art. XI, of the constitution, declaring that "it shall be the duty of the legislature, and they are hereby empowered to provide for the organization of cities and incorporated villages," taken in connection with sec. 23, art. IV, which provides that "the legislature shall establish but one system of town and county government, which shall be as nearly uniform as possible," prohibits the legislature from enacting a law whereby, without any distinction based on density of population or other substantial basis of classification, the inhabitants of any area may at will remain under town government or come in under village government.    The argument of this question has been both interesting and

learned. In any aspect, the points involved are important
and troublesome. It will be observed that the constitution
nowhere contains any limitation upon the power of the legis-
lature to incorporate cities or villages, as to area or density
of population, except such as may be implied from the use
of the words "cities and incorporated villages." We fully
concede that if the law, properly construed, permits rural
territory, possessing none of the attributes of villages, to
change from town to village government at will, it cannot be
sustained. The law, as construed in the former opinion, fixes
no limitation as to maximum size of territory that may be
incorporated, except that it is limited to "part of any town
or towns." It prescribes no restriction as to density of popu-
lation except that it shall contain a resident population of
not less than 300 persons. As to cities the limitations are
even less definite. Sec. 925—7, Stats. 1898, permits "any
district containing a population of fifteen hundred or over and
not heretofore incorporated as a city" to take on the attri-
butes of a regularly incorporated city. The objection raised
to sec. 854 applies with equal force to the one last mentioned.
Such objections are not without some force, and the argu-
ment in their support is not without plausibility. But the
magnitude of the interests involved, and the importance of
the question to the many cities and villages of the state that
have become incorporated under these laws, require us to ap-
proach the question with the utmost caution, examine it in
every possible aspect, and ponder upon it as long as delibera-
tion and patient attention will throw any new light on the
subject. The rule has been many times repeated that courts
should not declare an act of the legislature void unless, when
considered in all its aspects, such invalidity appears beyond
a reasonable doubt. Cooley, Const. Lim. 216. The question
is always one of great delicacy, often involving most impor-
tant rights, and its solution as frequently far-reaching in its
results. The implication always exists that the legislature

did not intend a violation of the organic law. The presumption is that the law-making body acted with integrity, and with a just desire to keep within the restrictions of the constitution. The law in question is not attacked for what it contains, but rather for what it does not contain. Its alleged infirmity rests upon the fact that it fails to contain certain limitations, which, if there, would prevent the infraction of the constitutional rule as to uniformity of town government. As observed, the section authorizing the organization of cities and villages contains no mandate requiring any limitation as to size or density of population. Undoubtedly, when the constitution was formed, its makers had in mind the three political subdivisions existing in the older sections of the country—towns, cities, and villages. It is true that in popular parlance these words had a somewhat indefinite meaning; especially so as to towns and villages. This fact is fully illustrated in the opinion of Mr. Justice BRADLEY in *Town of Enfield v. Jordan,* 119 U. S. 680. But we need not hesitate or be misled by that fact. We may refer to the constitution itself to ascertain the scheme of government had in mind by its framers, and also seek aid from such collateral sources as are deemed helpful in that regard. It is a fact of common knowledge that very many of the members of our constitutional convention were from New England and New York. In those states the town was the political unit of territory into which the county was subdivided, and a mere inspection of the constitution demonstrates that where the word "town" is used therein it was used with reference to this idea. The word "city" undoubtedly refers to a municipal corporation of the larger class, somewhat densely populated, governed by its mayor and board of aldermen, with other officers having special functions. A "village" means an assemblage of houses less than a city, but nevertheless urban or semi-urban in its character, and having a density of population greater

414    SUPREME COURT OF WISCONSIN.    [FEB.

State ex rel. Holland v. Lammers, 113 Wis. 398.

than can usually be found in rural districts. A very common definition of a village found in the books is as follows:

"Any small assemblage of houses, for dwelling or business, or both, in the country, whether situated upon regularly laid out streets and alleys or not." *Ill. Cent. R. Co. v. Williams,* 27 Ill. 48.

A note to the case of *People v. McCune* (Utah), 35 L. R. A. 396, collects the cases on what constitutes a village, and may be consulted with profit. See *State ex rel. Childs v. Minnetonka,* 57 Minn. 526. Assuming that the framers of the constitution had these ideas in mind when that instrument was framed, we must also assume that when the legislature passed a law in obedience thereto for the creation and organization of cities and villages such law must be interpreted and applied according to those ideas, unless a contrary intent plainly appears. In other words, if the law contains no restrictions upon the size or density of population of the territory sought to be incorporated, a restriction must be implied from the name of the corporation and the purpose for which it is to be created. When the law says that any district containing a population of 1,500 or over may become incorporated as a city, it means that any district having the ordinary and usual characteristics of a city may thus become incorporated. Who are empowered to create such corporations? The inhabitants of a territory which has the attributes and characteristics of urban settlements. What may they incorporate? A city, with such territory as is distinctly urban in character, with such adjacent lands as are naturally connected with, and are reasonably appurtenant and necessary for future growth, in view of the surroundings and circumstances of location and prospects of future prosperity. The same limitations must be held to apply to the incorporation of villages. The exigencies of the situation will not permit any very fine lines to be drawn. Under the law in question the territory seeking incorporation as a village must be harmonious with the idea

of what a village actually is. It may not include large areas
of rural or agricultural lands, sparsely settled, or widely dis-
tributed. It may only include the settled portion,—that is,
the part having the distinctive characteristics of a village,—
with such additions as have a natural connection with, and
seem reasonably appurtenant and necessary for, future
growth. Just where the line should be drawn as to cutting
off additional territory may be difficult to determine. It must
depend largely upon the location, surroundings, and immedi-
ate prospects of each particular village. In absence of some
expression of the legislative will, the question becomes one of
fact to be determined in each case as the question arises. It
is insisted, however, that the boundaries of such corporations
are a question to be determined by the legislature, and not by
the courts. This may be true as to such municipalities as
have been created by special enactment. So, also, if the legis-
lature had provided that cities and villages proposing to in-
corporate under general laws should be empowered to embrace
territory lying beyond their actual borders to any prescribed
limit, it may be that in the clear abuse of the power it would
be the duty of the court to respect the legislative will, and
hold an incorporation including such additional territory
valid. See *Washburn v. Oshkosh,* 60 Wis. 453. But, as we
construe the law, no such power has been granted, and the
question before us is whether or not the attempted corpora-
tion of the village of Cedar Grove is reasonably within the
law and the constitution. This is a judicial, and not a legis-
lative, inquiry. See *Ewing v. State ex rel. Pollard,* 81 Tex.
172; *State ex rel. Childs v. Minnetonka,* 57 Minn. 526; *S. C.*
25 L. R. A. 755, and note. With the implied limitations we
have mentioned surrounding each attempt to incorporate vil-
lages under the general law, it may be upheld as a valid enact-
ment, and impervious to the attack upon it that it violates the
constitutional rule of uniformity of town government.

Our attention has been called to the case of *People ex rel.*

*Shumway v. Bennett,* 29 Mich. 451, which held an act relating to the incorporation of villages unconstitutional for the reason that it delegated to private citizens the legislative function of fixing boundaries and compelling the incorporation of separate villages and intervening farming lands without any opportunity for a hearing. We have no criticism of the result of the case, but do not subscribe to the proposition that the legislature may not, within reasonable limits, delegate to the inhabitants of a proposed city or village the right to fix the boundaries to be incorporated in the first instance. Where the legislature enacts a general law for the incorporation of such municipalities, and even fixes minimum and maximum limits, the right to determine the area to be included in a given incorporation must rest with the inhabitants perforce of the situation. We get but little assistance from decisions in other states, because the laws being construed vary, and the decisions often turn upon the exact wording of the law under consideration. In *State ex rel. Childs v. Minnetonka,* 57 Minn. 526, the statute permitted "any district, sections or parts of sections which have been platted into lots and blocks, also the lands adjacent thereto, . . . said territory containing a resident population of not less than 175, may become incorporated as a village." The corporation attacked contained nearly thirty square miles. The court held that the act did not authorize the incorporation of large tracts of rural territory having no natural connection with any village and no adaptability to village purposes. This case was followed by *State ex rel. Childs v. Fridley Park,* 61 Minn. 146, wherein the incorporation of a village including more than fifteen square miles, much of it being agricultural lands, was held void. In *St. Paul G. L. Co. v. Sandstone,* 73 Minn. 225, the point that the statute was unconstitutional because legislative functions were delegated to the petitioners, who were authorized under the statute to take the initiative, was directly overruled. It was held that the

State ex rel. Holland v. Lammers, 113 Wis. 398.

statute did not confer discretion upon the petitioners arbitrarily to determine what territory should be included in the village. So here we hold that the power to incorporate territory as a village under sec. 854, Stats. 1898, is limited to such territory as possesses the characteristics mentioned. It must be a village in fact, with a reasonably compact center or nucleus of population, and not a mere agricultural community. If territory beyond the thickly settled limits is included, such territory ought reasonably to possess some natural connection with and adaptability to village purposes, and seem reasonably to be necessary for future growth and development. In absence of some specific legislation regulating the matter more closely, the courts must meet and determine in each given case the fact of whether these restrictions have been overstepped. In this case the territory sought to be incorporated covers two square miles, and has over 300 inhabitants. The former opinion shows the grounds upon which the incorporation was attacked. A demurrer to the complaint was sustained by the court below and affirmed here. The only question left open on this rehearing is the one we have discussed and decided adversely to the appellant. The order appealed from is affirmed, and the cause is remanded for further proceedings according to law. ·

*By the Court.*—So ordered.

CASSODAY, C. J. Upon the former hearing of this case I respectfully dissented from the construction given to the statute in question by my brethren, and gave my reasons at considerable length. Had the statute been construed as, in my judgment, it should have been, no question as to its validity could have arisen. Since the construction given by my brethren must prevail, I am forced to dissent from the conclusion now reached, as being repugnant to the constitutional provisions cited in the opinion of my brother BARDEEN. With

that construction, the parts of several towns "all lying in the same county," and which may comprise several square miles of territory, with only 300 inhabitants, may be incorporated into a village, while a very much less amount of adjoining territory, containing a very much greater number of inhabitants, may remain a town. In the case at bar more than two square miles of territory, containing only 317 inhabitants, is allowed to become an incorporated village. In my judgment, the constitutional objection is not obviated by assuming or leaving it open for proof that the inhabitants may be mostly in a small part of the territory, leaving the balance with very few, if any, inhabitants. I am unwilling to subscribe to the proposition that such an extensive amount of territory, with few, if any, inhabitants, may become incorporated as a part of a village with only 300 or 317 inhabitants. Nor am I willing to subscribe to the proposition that the constitutionality of the statute turns upon the fact, to be determined by a court or jury, whether such 300 inhabitants are clustered upon a small portion of the territory, or scattered throughout its whole extent. The result of such a ruling will very likely be that a corporation may be held to be valid in one jurisdiction and void in another jurisdiction, where the facts are substantially the same. Instead of settling the question presented, it seems to me that the decision unsettles the law, and opens the door for endless litigation.