ELLIOTT *v.* CITY OF DETROIT.

(Two Cases.)

CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—REFERENDUM.
Act No. 452, Local Acts 1899, providing for amendments to the charter of the city of Detroit by vote of the electors, is void as an unauthorized delegation of legislative power.

*Certiorari* to Wayne; full bench.    Submitted November 2, 1899.    Decided on the hearing.

*Mandamus* by William H. Elliott and others to compel the city of Detroit, its common council and clerk, to refrain from further action looking to the submission to the electors of said city, under Act No. 452, Local Acts 1899, of certain proposed amendments to the city charter, one relating to municipal franchises in general, and the other providing for the creation of a street-railway commission. The writs were granted in the circuit court, and respondents removed the causes to this court by *certiorari,* where the decision and opinion of the lower court were affirmed.

*H. H. Hatch,* for relators.

*Charles Flowers* (*Isaac N. Payne,* of counsel), for respondents.

The opinion in the court below was written by Judge Frazer, and was concurred in by all of his associates except Judge Hosmer, who concurred in the result reached. The opinion reads as follows:

* "Petitions in these two cases were filed, asking the court to issue a writ of *mandamus* commanding the said city of Detroit, and the common council of said city, and the city clerk of said city, to desist and refrain from proceeding further to publish certain notices mentioned in said petitions, and from incurring any expense in the publication thereof, and from paying any expense heretofore incurred in connection with the publication thereof, and also from preparing any ballots in respect to such propositions or proposed amendments to the city charter for use by the electors at the election to be held in November next, and from incurring any expense in connection therewith, and from incurring any expense whatever in connection with the said proposed amendments or propositions. These two petitions are based upon the claim that under an act of the legislature entitled 'An act to provide for public notice of proposed charter changes, and the method by which the city of Detroit may alter or amend its charter,' the said respondents are proceeding to hold an election in accordance with the provisions of the same.

"Section 1 provides that:

" 'The charter of the city of Detroit shall be amended, altered, or repealed in the manner herein provided.'

"Section 2 of said act provides that:

" 'Upon the recommendation of the mayor of the city of Detroit, and by resolution approved by a three-fourths vote of the common council elect of said city, or by petition of five thousand qualified electors, said common council shall prepare in proper form and by title, and submit to the electors of said city, propositions to effect any amendment or amendments to the charter of said city. Such propositions shall be presented only in the month of November of any year.'

"Section 3 provides that:

" 'Any one and all such propositions shall be published by title and in full at least once a week for eight successive weeks during the months of September and October following the month of petition, in at least four newspapers published in the city of Detroit,

and at least six half-sheet poster notices displayed conspicuously in each precinct of the city; and all such notices shall distinctly set forth the fact, in addition, that contemplated charter amendments are to be voted on at the approaching November election.'

" It is contended on the part of the respondents that the court has no jurisdiction in the matter by way of *mandamus*, that *mandamus* is not the proper remedy, and that the petitions in these cases are filed by private individuals, without the intervention of the attorney general. The court allowed the counsel to proceed to the argument on the petitions, not only upon the question of jurisdiction, but also upon the merits of the controversy; in which argument it appeared that there were no disputed facts, but that all the questions were questions of law. It is clear to us that if this same question had been presented to the court upon a bill in chancery, asking for an injunction to restrain the respondents from doing what they are claimed to be doing, as set forth in the petition, an injunction would be granted. It is also apparent to the court that the petitioners are interested as taxpayers in the manner in which the public moneys are expended, and, if expended illegally, they have such a personal interest, and the intervention of the attorney general is not essential, as in cases purely of a public nature. It is also apparent to the court that if application had been made to the attorney general to allow these cases to proceed, and he had declined, the court would compel him to intervene. And it is also apparent that the matter now before the court is of such immediate and pressing importance, the time intervening between now and the November election being so short, that it would be practically impossible to review the questions presented by · these petitions in any other way than by *mandamus*. These conclusions compel the court to determine the issue. Nothing could be gained, as no legal right has been violated by allowing this matter to be heard upon the present petitions asking for a *mandamus* as prayed for.

"The question to be determined in this matter comes up on demurrer to the petitions. The main question, as we understand it, is whether the law known as the 'Eikhoff Law,' being the act which has already been designated by its title in this opinion, is a valid act, and within the power of the legislature to pass. As we understand the matter, all legislative authority, under the Constitution, is placed in the legislature, and it has no power to dele-

gate that authority to any one, unless in a constitutional way and by authority of law. It was contended upon the argument that there are numerous authorities holding that the legislature has authority to delegate legislative powers to municipalities, such as a city government; but, while this proposition may be true, it is only true as restricted by the law. The legislature has power to delegate certain legislative functions to the legislative branch of a municipal government, and the legislature might empower the common council of the city of Detroit to make by-laws or ordinances in the nature of legislative enactments; but in delegating this authority it must point out specifically the powers delegated, and the extent of those powers. The act under consideration goes further than this, and practically abandons all legislative functions on the question of amending or repealing the city charter; and it transfers that authority, or delegates that authority, not to the legislative branch of the city government, but to the mayor, the executive head of the municipality. He, and he alone, under a certain provision in section 2 of the act, can recommend such amendments to the city charter as he may desire; or he may recommend the repeal of the entire charter if he sees fit, and, if approved by a three-fourths vote of the common council, it must be submitted to the electors of the city for their approval or rejection. The other provision of the law permits 5,000 qualified electors to present a petition to the common council proposing such amendments of the city charter as they may see fit, or even asking for a repeal of the same, and, upon the presentation of such petition, the common council has no alternative but to submit the question to the people for adoption or rejection. The legislative power, under these provisions of the law, which, under our system of government, rests with the legislature of the State, has been practically transferred to the mayor of the city of Detroit, or to any 5,000 electors who see fit to petition, on the subject of amendment or repeal of the charter. As far as the general people are concerned, they have nothing whatever to do with the matter, except the privilege of voting for or against any given proposition submitted to them; the framing of the proposition, the consideration of it previous to its being presented to the electors, being entirely beyond their power, as we construe this act. Any attempt upon the part of the legislature to delegate wholesale, unqualified,

and undefined authority, either to the mayor or any 5,000 citizens who may see fit to present a petition, is, in our opinion, contrary to the Constitution and laws of this State.

"If it be urged that by this act legislative power is delegated, not to the mayor or to 5,000 electors, but to the electors residing within the territorial limits of the city of Detroit, it is equally clear that the act is unconstitutional. Section 38 of article 4 of the Constitution provides:

"'The legislature may confer upon organized townships, incorporated cities and villages, and upon the board of supervisors of the several counties, such powers of a local legislative and administrative character as they may deem proper.'

"This, at most, clearly means that the legislature shall, in its discretion, determine what legislative and administrative powers a municipality shall have.   By this act, under respondents' contention, the municipality shall have such legislative and administrative powers as the electors residing in the municipality determine.   In other words, the legislature has delegated the power, which the Constitution says it shall exercise, to another body.   This cannot be done, according to all principles of constitutional law.

"Other questions were presented for the consideration of the court, in regard to the manner in which the authority conferred by this law has been exercised by the common council; but, as we view the case, this is not essential for the consideration of the court in order to determine the issue, because, if the legislature had no authority to pass this law, all proceedings under it would be void.

"The demurrers in these cases are overruled, and a *mandamus* ordered to issue as prayed for."