PRESQUE ISLE PROSECUTING ATTORNEY *v.* TOWNSHIP OF ROGERS.

1. MUNICIPAL CORPORATIONS—INCORPORATION OF NEW HOME RULE CITIES—ELECTIONS.

   Under home rule city act as amended, when a new city is incorporated under that act only qualified electors in the territory proposed to be incorporated may vote on the question of incorporation, those residing in township territory outside of such territory being ineligible notwithstanding their possible desire to see that part of the township property be not removed from the township tax rolls (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2245, as amended by Act No. 314, Pub. Acts 1931, and Act No. 48, Pub. Acts 1935).

2. CONSTITUTIONAL LAW—STATUTES—LEGISLATURE—COURTS.

   The wisdom of legislation is for the legislature and not for the courts.

3. MUNICIPAL CORPORATIONS—NEW HOME RULE CITY—CONSOLIDATION —CHANGE OF BOUNDARIES.

   The incorporation of a home rule city to include territory of an incorporated village and additional territory from the township is a new incorporation and not a consolidation or a change in boundary (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2242, as amended by Act No. 231, Pub. Acts 1939; § 2244; § 2245, as amended by Act No. 48, Pub. Acts 1935).

4. CENSUS—INCORPORATION OF NEW HOME RULE CITY—PURPOSE— PETITION.

   The purpose of a census taken incident to proceedings for the incorporation of a new home rule city is to determine who is entitled to vote, as well as the place where such voters reside, and the only way such census could be taken is when the original petition for incorporation and the petition for the census

---

* Continued from Vol. 312.

describe the territory proposed to be incorporated in the new city (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2242, as amended by Act No. 231, Pub. Acts 1939; § 2244; § 2245, as amended by Act No. 48, Pub. Acts 1935).

5. MUNICIPAL CORPORATIONS—BOARD OF SUPERVISORS—ELECTION—TERRITORY INCLUDED IN PETITION.

While the board of supervisors to whom a petition for the incorporation of a home rule city is addressed orders an election and sets the date therefor on the question of incorporation, it has no power to change the territory fixed by the petition (1 Comp. Laws 1929, § 2242, as amended by Act No. 231, Pub. Acts 1939; § 2244; § 2245, as amended by Act No. 48, Pub. Acts 1935).

6. SAME—BOUNDARIES—LEGISLATURE.

The fixing of municipal boundaries is generally considered to be a legislative function and is included in the power vested in the legislature to provide for the incorporation of cities and villages by general law (Const. 1908, art. 8, §§ 20, 21).

7. SAME—LEGISLATURE—BOUNDARIES—COURTS—LOCAL AUTHORITIES —ELECTIONS.

In the absence of constitutional inhibition the legislature may submit the determination of municipal boundaries to courts, municipal authorities, or to the qualified electors (Const. 1908, art. 8, §§ 20, 21).

8. SAME—INCORPORATION OF NEW HOME RULE CITY—REASONABLENESS OF INCLUSION OF TERRITORY.

On the assumption that the reasonableness of including proposed territory in the incorporation of a new home rule city is a matter subject to judicial review, where township territory adjacent to a village includes platted areas, lakefront, land needed for city drainage purposes, an area traversed by a United States highway with nearby tourist and resort cabins and the local airport, its inclusion was clearly not unreasonable (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2245, as amended by Act No. 48, Pub. Acts 1935).

9. SAME—REASONABLENESS OF INCLUSION OF TERRITORY IN NEW HOME RULE CITY—LIMESTONE AND CHEMICAL COMPANY.

Reasonableness of inclusion in proposed territory in incorporation of a new home rule city being subject to judicial review, having been assumed for the purpose of case at bar, the inclusion of land of limestone and chemical company on which is located its plant which has its own electric generating equipment, water system, police protection and sewer facilities

*held,* not so unreasonable as to justify declaring election void since it is conceivable that the company may be benefited rather than disadvantaged by the urban development and its use of beach and lake area as a dumping ground is a matter needing municipal control (Const. 1908, art. 8, §§ 20, 21; 1 Comp. Laws 1929, § 2245, as amended by Act No. 48, Pub. Acts 1935).

Appeal from Presque Isle; Pugsley (Earl C.), J., presiding. Submitted June 13, 1945. (Docket No. 60, Calendar No. 43,092.) Decided December 3, 1945.

Information in the nature of quo warranto by Frederick P. Hempel, as prosecuting attorney for the county of Presque Isle, on his own relation and on the relation of Michigan Limestone & Chemical Company and others, against the Township of Rogers and others to test the legality of an election on question of incorporating the city of Rogers City. Information dismissed. Plaintiff and certain relators appeal. Affirmed.

*Frederick P. Hempel,* for plaintiff and relators Radtke, Halbauer, Valentin, and Dweltgen.

*Miller, Canfield, Paddock & Stone,* for relator Michigan Limestone & Chemical Company.

*A. W. Wilcox,* for defendants.

*George R. Sidwell, amicus curiae.*

BOYLES, J.   Plaintiff appeals from a judgment of the circuit court in Presque Isle county upholding the legality of election proceedings whereby Rogers City was incorporated as a home rule city. At a special election held October 2, 1944, the qualified electors of the territory proposed to be incorporated as a city voted overwhelmingly in favor of the incorporation. The territory to be incorporated in-

cluded the village of Rogers City and some parts of Rogers township outside the village limits. After the election the prosecuting attorney of Presque Isle county in his official capacity and on the relation of Michigan Limestone & Chemical Company and others commenced the instant quo warranto proceedings to test the validity of the election. A lengthy hearing was held by the circuit judge who decided that the election was legal and that the city was legally established and incorporated as a home rule city. From the judgment dismissing his petition plaintiff appeals. The several alleged errors upon which appellant relies for voiding the election may be grouped and will be considered seriatim.

1. Was it necessary to the validity of the election that qualified electors residing in the township outside of the territory proposed to be incorporated be afforded an opportunity to vote at the election?

The statutory provisions governing the incorporation of home rule cities are in Act No. 279, Pub. Acts 1909, and amendments thereto, being 1 Comp. Laws 1929, § 2228 *et seq.* (Stat. Ann. § 5.2071 *et seq.*). The question as to who is entitled to vote at an election to incorporate a home rule city is settled by section 9 of this act, being 1 Comp. Laws 1929, § 2245* (Stat. Ann. § 5.2088.). This section begins as follows:

"The district to be affected by every such proposed incorporation, consolidation or change of boundaries shall be deemed to include the whole of each city, village or township from which territory is to be taken or to which territory is to be annexed."

To the foregoing the following proviso was added by Act No. 314, Pub. Acts 1931:

---

* This section was amended by Act No. 314, Pub. Acts 1931, and Act No. 48, Pub. Acts 1935. The 1935 amendment did not change the wording of the quoted proviso added by the 1931 amendment.— Reporter.

"*Provided, however,* That when a territory is proposed to be incorporated as a city only the residents of the territory to be incorporated shall vote on the question of incorporation."

At the election in question only qualified electors in the territory proposed to be incorporated were allowed to vote. Appellant contends that by including the incorporated area of the village of Rogers City with a part of Rogers township outside of the village to make up the territory proposed to be incorporated as a home rule city, under other provisions in section 9 the instant case must be construed as a "consolidation" as distinguished from a "new incorporation" and that therefore a vote of the "district to be affected," *i.e.*, the entire township, was necessary. This might have been true prior to the amendment of 1931. However, under the 1931 amendment, it is quite obvious that the present proposal was to incorporate a new city, although of course it involved a consolidation of territory into the new municipality. The adoption of the above-quoted 1931 amendment to the act has made applicable to the incorporation of new cities the construction given by this court to the corresponding statute governing the incorporation of a new village, * in *Bray* v. *Stewart,* 239 Mich. 340, namely, that only those residing within the territory proposed to be incorporated should be permitted to vote. The 1931 amendment to the city home rule act, following shortly after that decision, removed the distinction between those who might vote on the proposed incorporation of a village and of a city under like circumstances.

It may be admitted that the voters and taxpayers in the remaining part of the township have an in-

---

* 1 Comp. Laws 1915, § 2843 *et seq.,* as amended by Act No. 395, Pub. Acts 1919, and Act No. 90, Pub. Acts 1925. (See 1 Comp. Laws 1929, § 1763 *et seq.* [Stat. Ann. § 5.1511 *et seq.*].—REPORTER.)

terest in seeing that a part of the township property is not removed from the township tax rolls, but the legislature has seen fit to declare that the residents in the remaining part of the township cannot defeat the will of the residents in that part who desire that their territory be made a part of the newly-incorporated city. As we have often repeated, the wisdom of legislation is for the legislature, and not within the province of the court. The claim of appellant that this is a consolidation or change of boundary within the meaning of other provisions of said section 9, and not the incorporation of a new city, is not tenable although unquestionably there is some conflict and much ambiguity between different expressions in the statute. Prior to the election there was no *city* in this area, hence it is not a consolidation, or a change of boundaries, of a *city* with a village or other territory, or of two cities; neither is it a consolidation of two villages. It seems to us that the claim that it is a "consolidation" of a village and additional territory is untenable because the result is not a *village* with additional territory; the result is a newly incorporated city. The 1931 amendment as to who may vote adds strength to this construction of the legislative intent. Under existing statute law the residents of that part of Rogers township outside of the territory proposed to be included in the new corporation were not entitled to vote on the question of incorporation.

2. Was the inclusion of certain lands into the territory proposed to be incorporated in the new city so unreasonable as to require judicial voiding of the election? This question involves a preliminary determination whether the court has the power to pass on the reasonableness of the boundaries as fixed by the original petition and the vote of the residents in the area.

Proceedings for the incorporation are initiated by a petition signed by the requisite number of qualified electors residing in the territory to be affected thereby. Also, in proceedings for the incorporation of a new city, a separate petition may be filed with the county clerk for the taking of a census of the inhabitants affected thereby. Enumerators are then appointed to take a census of the inhabitants of each city or village affected thereby *and the portion of each township proposed to be so incorporated.* Act No. 279, § 6, Pub. Acts 1909 (1 Comp. Laws 1929, § 2242, as amended by Act No. 314, Pub. Acts 1931 [Stat. Ann. § 5.2085]). (The amendment to section 6 by Act No. 231, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 2240, Stat. Ann. 1945 Cum. Supp. § 5.2085], has no bearing on the issues at bar.) The plain purpose of a census thus defined is to determine who is entitled to vote, as well as the place where such voters reside. The only way such a census could be taken is when the original petition for incorporation and the petition for the census describe the territory proposed to be incorporated in the new city. Section 9 of the act (1 Comp. Laws 1929, § 2245, as amended), as hereinbefore stated, provides that where territory is proposed to be incorporated as a city only the residents of the territory proposed to be incorporated shall vote on the question. Obviously the territory to be incorporated must be defined before the election can be held. The original petition by which the proceedings are initiated is addressed to the board of supervisors of the county and filed with the county clerk. If the petition is found to conform to the provisions of the act, the board of supervisors orders the election and sets the date, section 8 of the act (1 Comp. Laws 1929, § 2244 [Stat. Ann. § 5.2087]). The board of supervisors has no power to change the territory fixed by the petition. *Bray* v. *Stewart, supra.*

Appellant relies on *People, ex rel. Shumway,* v. *Bennett,* 29 Mich. 451 (18 Am. Rep. 107), in support of his claim that the boundaries of the proposed incorporation cannot be fixed by the signers of the petitions, that the territory and the question of its suitability, as well as the reasonableness and necessity for its "acquisition," must be submitted to a responsible official body, *e.g.,* the courts. The *Shumway Case, supra,* was discussed by the court in *Oakman* v. *Board of Supervisors of Wayne County,* 185 Mich. 359, and in considering the home rule incorporation act here involved, the court said (p. 362):

"The argument is made that because the act fails to vest the board of supervisors or some other public board with discretion to determine the question, but leaves it to the electorate to decide, the act is void, and this argument is based upon the holding in *People, ex rel. Shumway,* v. *Bennett,* 29 Mich. 451 (18 Am. Rep. 107). That was a case in which the general village incorporation act of 1873 was held unconstitutional, principally upon the ground that it made it possible for a few petitioners, by the aid of the court, to bring about incorporation of certain territory, where the inhabitants of such territory were opposed to it. We think this case ought not to control the one under consideration. In Act No. 279 it will be noted that provision is made for an election in not only the municipality from which the territory is proposed to be detached but also in the municipality to which the annexation is proposed to be made. If the act stopped there, counsel's argument would have much force, but it goes further and provides that the votes of those residing in the particular territory to be annexed shall be kept separate, and that, if a majority of those residing therein shall consent thereto, the annexation shall be made. In other words, the act not only requires a majority vote of all those residing in both municipalities, but requires a majority vote of those residing in the par-

ticular territory.   This provision meets the princi-
pal ground upon which the act was declared void in
*People, ex rel. Shumway,* v. *Bennett, supra.*

"The changing of the boundaries of political divi-
sions is a legislative question, and the power to an-
nex territory to municipalities has often been dele-
gated to boards of supervisors or other public
bodies.   In view of this, we see no valid objection to
the power being delegated to boards of supervisors
with a referendum attached, especially since the
Constitution has recognized the principle of refer-
endum.   We think this objection is without merit."

The *Shumway Case* was again considered by the
court in *Bray* v. *Stewart, supra,* in discussing the
home rule acts for cities and villages, and the court
said (pp. 345, 346):

"The act in question (Act No. 278, Pub. Acts
1909) and that which follows it (Act No. 279, Pub.
Acts 1909 [1 Comp. Laws 1915, § 3304 *et seq.*]) were
enacted pursuant to the mandatory provision of the
Constitution (art. 8, § 20), and have been referred
to frequently as home rule acts.   The purpose is to
confer a greater degree of power upon the electors
in the management and control of local affairs.   The
cases relied on by counsel for the plaintiffs (*People,
ex rel. Shumway,* v. *Bennett,* 29 Mich. 451 [18 Am.
Rep. 107], and *Elliott* v. *City of Detroit,* 121 Mich.
611) were decided prior to the passage of these
acts."

The fixing of municipal boundaries is generally
considered to be a legislative function.   *Village of
Kingsford* v. *Cudlip,* 258 Mich. 144; 37 Am. Jur.
pp. 633, 639, 645, 646.   In this State the power vested
in the legislature to provide for incorporation of
cities and villages is in no way limited by Constitu-
tion (art. 8, §§ 20, 21) (home rule amendment), and
the power conferred on the legislature by the Consti-
tution (art. 8, § 20) to provide by general law for in-

corporation of cities and villages includes change of boundaries when needed. *Village of Kingsford* v. *Cudlip, supra.* In the absence of constitutional inhibition the legislature may submit the determination of boundaries to courts, or to municipal authorities, or to the qualified electors. Generally, statutes so providing are sustained. 1 McQuillin, Municipal Corporations (2d Ed. Rev.), chap. 7, § 290 (271). For statute in this State submitting such a determination to courts, see Act No. 357, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 2344-11—2344-18, Stat. Ann. 1945 Cum. Supp. §§ 5.2246 [1]-5.2246 [8]). The constitutionality of this act was upheld as against the challenge that it was a delegation of legislative power. *Secord* v. *Village of Leonard,* 307 Mich. 134. In other jurisdictions courts generally hold that the question of reasonableness of extension of corporate limits is subject to judicial review. See 1 McQuillin, Municipal Corporations (2d Ed. Rev.), chap. 7, § 291 (272), p. 801, and cases cited. However, decision in each instance depends upon the constitutional or statutory provisions of the jurisdiction in which the conclusion is reached. The precise question is novel in this State. Merely for the purposes of the case at bar we may assume that the reasonableness of including the proposed territory in the new incorporation is subject to judicial review.

In the case at bar the circuit judge heard the testimony of a considerable number of witnesses and admitted approximately 50 exhibits as a basis for deciding whether the inclusion of the proposed territory was reasonable. With the possible exception of the property of the appellant Michigan Limestone & Chemical Company in sections 23 and 24 of Rogers township, the record fully justifies the conclusions arrived at by the circuit judge that the in-

clusion of the territory was not unreasonable. We quote from the trial court's opinion:

"As to the area proposed to be included, other than sections 23 and 24, it cannot be judicially determined that the addition of any part thereof is entirely unreasonable. To the contrary, there are obvious reasons advanced by the planning committee, and indorsed by the village council, prior to the election, why their addition is desirable.

"No one disputes the advisability of including section 16, on which are located the platted areas of Pinewood, Lehndorff's addition, Pinewood No. 1, Birchwood, Lincoln Park, and Trout River Grove. It being admitted that it is desirable to annex section 16, it takes only a glance at the map to disclose the advantage and desirability of also adding section 9, directly to the north, with its desirable frontage on Lake Huron. We drop down to section 21, which it is admitted is not desirable or attractive for extensive residential occupancy in its entirety, but according to several witnesses, is much needed by the city for drainage purposes. It is also observed that the northeast corner of this section, like sections 16 and 9 to the north, and the southwest corner of section 22, is crossed by highway US–23. It can hardly be said that it would be unreasonable under these conditions to include section 21. It has also been pointed out that it may be quite desirable for the city to exercise police supervision and control over the housing conditions along highway US–23, including tourist and resort cabins that may be located in this area. On the south half of section 22 is the local airport. The development of aviation and the prospects of its future growth and advantages to the city forbid the court to reject as unreasonable the inclusion of this area."

The only strenuous opposition to the proposed incorporation is by the Michigan Limestone &

Chemical Company. It claims that the election should be set aside and the incorporation proceedings held void because of the inclusion of its property in the new city. The crux of the objection by the Michigan Limestone & Chemical Company to its property being included in the proposed city is that it will be burdened with taxes from which it will receive no urban benefits. However, this is a matter of opinion, not susceptible of accurate proof tending to any certainty in arriving at a conclusion. Any conclusion as to the future benefits the company may receive from the action of municipal authorities is purely in the realm of speculation. In this case the proofs show that this company now generates its own electrical energy, has its own water system, is satisfied with its own police protection and maintains such sewer facilities as it claims it needs. Any conclusion as to whether these facilities may be acquired by, combined with, or improved through future action by municipal authorities, to the advantage or disadvantage of the company, is mere speculation. There is no certainty as to what extent the company may be benefited by added fire protection; benefit to the company through its employees and personnel by better housing conditions and other urban advantages; possible increase in value of the company plant. These are doubtless only a few of many future conditions which only a crystal-gazer would attempt to predict. Undoubtedly the residents and incorporators contemplated the benefits to be derived for municipal development through taxes to be collected from the appellant company, and probably this is equally true of the rest of the property included in the proposed municipality. However, we believe that was not the controlling reason for voting to organize a home rule city. It is true that urban benefits and advantages can be

obtained only at the expense of paying for them. Conceivably the company may be benefited rather than disadvantaged by the urban development of the proposed area. It is fair to assume that the benefits of incorporation will not be unilateral to the exclusion of benefit to the appellant company. Lands used for manufacturing or mining purposes may, and usually do, derive more benefit from the usual municipal improvements than does purely agricultural land. This was pointed out in *Stees* v. *Bergmeier,* 91 Minn. 513 (98 N. W. 648), quoted by this court in considering the validity of legislation authorizing the severance of agricultural land from municipal territory, in *Tribbett* v. *Village of Marcellus,* 294 Mich. 607, from which we quote (p. 618):

"It is manifest that rural lands used exclusively for agricultural purposes do not sustain the same relation to the municipality as do unplatted lands which are used for manufacturing or mining or other similar purposes; for lands of the latter class may, and usually do, derive a benefit from the municipality in many ways, such as the benefit of police protection, water, lights, and sewerage, while those of the latter [*sic*] (former) class do not."

Furthermore, as pointed out by the trial judge, the Michigan Limestone & Chemical Company and the village of Rogers City grew up together following the demise of the lumber industry in that part of Michigan. Development and prosperity were interdependent and mutual. The company affords a livelihood to more than two thirds of the community inhabitants. The village has made desirable the surroundings to attract and retain the company's employees and personnel, contributes to their social, educational and cultural advantages and re-

quirements. An incorporated city may conceivably increase such benefits. The company must have personnel to operate, and the public welfare is interested, alongside the company, in the growth and development of the community through urban advantages and improvements. It may be important that, in the future, municipal authorities have some measure of control over the property occupied by the company and its facilities which are usually considered to be under municipal control. It appears from the record that the company has been using the beach and the lake fronting on the territory in question as a dumping ground, destroying the beach and creating an unsightly condition, which should be brought under municipal control. The present village limits and a part of the company property are contiguous. We are not prepared to hold that the circuit judge was in error in deciding that the inclusion of the proposed territory is not so unreasonable as to require that the election be declared void.

We have considered other questions raised and conclude that they have been sufficiently answered herein or do not require reversal. The judgment of dismissal is affirmed, with costs to appellees.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case