VILLAGE OF ELBERTA *v.* CITY OF FRANKFORT.

1. DEDICATION—ACCEPTANCE—TIME—MUNICIPAL CORPORATIONS.
   The dedication of a plat must be followed by a public acceptance by the municipality clothed with the power to do so and such acceptance must be made within a reasonable time.

2. MUNICIPAL CORPORATIONS—DEDICATION—PENINSULA—TAX ROLLS.
   Village whose plat, as distinguished from description attached thereto, included territory of peninsula, incorporated some 13 years after such peninsular territory had been transferred from sole township in which village purported to be incorporated to an adjoining township with land connection to the peninsula was not in a position to accept dedication of previous plat containing such land and the failure to include such territory upon its tax rolls following incorporation of the village is evidence of noninclusion within the village.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur, Dedication § 31.
[3-5] 37 Am Jur, Municipal Corporations §16.

3. SAME—CENSUS—BOUNDARIES.

The desire of a city to have listed upon its census rolls the "floating population" who live in boats and ferries that dock on nearby peninsula constitutes no legal or equitable basis for inclusion of such territory within the boundaries of such city.

4. SAME—BOUNDARIES.

The fixing of boundaries of a municipal corporation is a legislative function.

5. SAME—BOUNDARIES—ACQUIESCENCE.

Long acquiescence in boundaries between municipal corporations constitutes a decisive factor when such boundary comes into dispute between such municipalities.

6. COSTS—PUBLIC QUESTION—BOUNDARY BETWEEN ADJOINING MUNICIPAL CORPORATIONS.

No costs are allowed in proceeding for declaratory judgment as to boundaries between adjoining village and city, a public question being involved.

Appeal from Benzie; Pugsley (Earl C.), J., presiding. Submitted October 5, 1956. (Docket No. 50, Calendar No. 46,973.) Decided December 6, 1956.

Bill for declaratory judgment by Village of Elberta, a municipal corporation, against City of Frankfort, a municipal corporation, to determine rights of parties in a certain parcel of land and to fix corporate boundaries. Township of Gilmore interpleaded as party plaintiff. Decree for plaintiffs. Defendant appeals. Affirmed.

*Campbell & Campbell,* for plaintiffs.

*Warner, Norcross & Judd* (*Harold S. Sawyer* and *William G. Hyland,* of counsel), for defendant.

BLACK, J. We are asked, in this case, to reverse a decree determining that an uninhabited peninsula

separating Lake Michigan from Lake Betsie in Benzie county, belonging entirely to the Ann Arbor Railroad company, lies within the corporate limits of Elberta village (formerly a part of Gilmore township) and is not a part of the city of Frankfort. The peninsula extends in a northwestward direction between the 2 lakes and is a part of fractional section 28. Its boundary on land is the east line of section 28, which east line is the west line of adjacent section 27.

The principal question is whether a plat made in 1868, of the then town of Frankfort (later village and now city of Frankfort), then and there operated to include the peninsula within corporate confines of the town. If it did, then the defendant city of Frankfort is entitled to reversal of such decree. If not, then lawful action taken later, the result of which brought the peninsula within corporate limits of Gilmore township, is controlling.

The chancellor prepared an able and exhaustive opinion which serves best to indicate the nature of the case, the result reached, and reasons assigned in support of such result. His opinion follows, in entirety:

"This is a suit in equity to obtain a decree settling the boundary line between the plaintiffs, township of Gilmore* and the village of Elberta included therein, and the defendant, city of Frankfort, all of which municipalities are in Benzie county, Michigan. The parcel in dispute, to which all parties lay claim, is that fractional part of the northeast quarter of section 28, township 26 north of range 16 west lying south of Betsie lake and the channel leading therefrom into Lake Michigan. An understanding of the

---

\* By authority of Court Rule No 49 (1945), the township of Gilmore was added as a party plaintiff, after commencement of suit, without change of title of the cause.—REPORTER.

issues requires some study and analysis of the history and organization of these municipalities.

"On October 11, 1859, the board of supervisors of Grand Traverse county, Michigan, established the township of Crystal Lake, the boundaries of which corresponded at that time with those which were later included in what has since been and is still known as Benzie county, which was organized by PA 1869, No 385.

"On October 8, 1866, the board of supervisors of Grand Traverse county organized the township of Filmore (later and now known as Gilmore township), with its included area taken from the township of Crystal Lake previously organized in 1859, which was therein described as follows: Sections 7, 8, 17, 18, 19, 20, 29, 30, 31 and 32 in town 26 north of range 15 west and section fractional 10, all of 11, 12, 13, 14, fractional 15, fractional 22, all of 23, 24, 25, 26, fractional 27, fractional 34, and all of 36 and 37 in town 25 north of range 16 west.

"At a session of the board of supervisors of Benzie county held on April 24 and 25, 1871, the following lands were taken from the township of Crystal Lake and attached to the township of Gilmore: Fractonal sections 28, 27 and 34 lying south of Betsie lake, and the south half of sections 35, 36 of township 26 north of range 16 west and the south half of sections 31 and 32 of town 26 north of range 15 west and sections 5 and 6 of town 25 north of range 15 west, and sections 1 and 2 and fractional section 3 of town 25 north of range 16 west.

"The defendant city of Frankfort was first incorporated as a village in 1885 by 2 local acts of the Michigan legislature, numbered respectively 298, effective April 1, 1885, and 352, effective May 14, 1885. Both of these acts purport to describe all of the tracts and parcels of land within the limits of the village thus incorporated, all of which in both legislative acts are described as tracts and parcels located in the 'township of Crystal Lake, in the county of Benzie, State of Michigan.'

"In Local Acts 1885, No 298 one of the included parcels was described as: 'the northwest fractional quarter of section 28, [being situated in] township [number] 26 north of range 16 west.' This was admittedly an error as the entire 'northwest quarter of section 28' lies in Lake Michigan a considerable distance out from the shoreline. Local Acts 1885, No 352, passed and made effective approximately a month and a half later and subsequent to the holding of the village election provided for and contemplated in Act No 298, was obviously intended to correct the error mentioned and described the disputed area as the 'northeast fractional quarter of section 28.'

"The village of Frankfort was made a fifth class city without change of boundaries in 1935. (See Local Acts 1935, p 484.) Here again the disputed area was included and described as 'The northeast fractional quarter of section 28.' And here again the entire area within the city limits is described as being located in the township of Crystal Lake, in the county of Benzie, State of Michigan.

"At this point is must not be overlooked that, by the action of the Benzie county supervisors, hereinbefore related, taken 14 years previously in 1871, by which several descriptions were taken from the township of Crystal Lake and added to the plaintiff, township of Gilmore, there was included the area now in dispute and therein described as 'fractional sections 28  *  *  *  lying south of Betsie lake.' It thus appears that when the village of Frankfort was first incorporated, the area in dispute was a part of the township of Gilmore which lies entirely south of Betsie lake, thus leaving in the township of Crystal only that fractional part of the northeast quarter of section 28 which lies to the north of Betsie lake. It is also noted that neither when the village of Frankfort was originally incorporated as a village nor when it was later incorporated as a city was any part of the township of Gilmore included or described as being within its incorporated limits. It is not overlooked, however, that the entire

fractional northeast quarter of section 28 is located in town 26 north of range 16 west.

"The village of South Frankfort (now Elberta) was organized by the board of supervisors of Benzie county in 1894, pursuant to authority of PA 1857, No 168, being section 2983 *et seq.* of Howell's Statutes Annotated (1882).* No question is raised as to validity of its incorporation under the law in effect at that time. The area within the limits of the village was described as: 'All that part of the township of Gilmore, Benzie county, Michigan, north of the east and west quarter-section line of sections 34 and 35.' There is no question that the disputed area herein is within this description.

"In 1911, by legislative enactment, the legal status of the village of South Frankfort was recognized in Local Acts 1911, No 307 and its name was therein changed to Elberta, as it now stands.

"It is upon the foregoing record that both of the plaintiffs herein insist that the disputed area lies wholly within the township of Gilmore and the included village of Elberta. Upon the hearing, over the noted objection of the defendant, proofs were taken relative to the jurisdiction that has been exercised for a long period of time over the entire disputed area. In this connection the proofs show that the title to this land belongs to the Ann Arbor Railroad and that a large part of it bordering on the south side of Betsie lake has been for many years and is now utilized for railroad purposes. A part of the area lying to the west, south of Betsie lake and the channel leading therefrom into Lake Michigan, and part of it fronting on Lake Michigan is unoccupied, except as the same has been used for some recreational purposes by the village of Elberta. There has also been a road constructed into this recreation area with the consent of the Ann Arbor Railroad, by and at the expense of the village of Elberta. That part of the area which has been uti-

---

* This act was repealed by the general village act, PA 1895, No 3. See CL 1948, § 61.1 *et seq.* (Stat Ann § 5.1201 *et seq.*).—REPORTER.

lized for railroad purposes, being exempt from taxation, has never appeared on any assessment roll. The balance of the area from the year 1900 down to and including 1955 has been on the assessment roll of Gilmore township. It was also on the assessment roll of Gilmore township in the earlier years of 1872 and 1873. The rolls for these earlier years were offered in evidence to show that the township of Gilmore exercised jurisdiction over the area immediately following the transfer of the area from the township of Crystal Lake to the township of Gilmore by the action of the board of supervisors of Benzie county in 1871. At no time has any of the property appeared on the assessment rolls of either the township of Crystal Lake or the village or city of Frankfort.

"The evidence also shows that the same area, which was not exempt for railroad purposes, has been continuously assessed in the village of South Frankfort and the village of Elberta from 1898 down to and including 1955.

"The witness Allan Blacklock, president of the village of Elberta since 1932 and supervisor of the township of Gilmore since 1938, gave personal testimony that he had assessed the area subject to taxation on the rolls in the township of Gilmore and that the same had also been spread upon the village roll for taxes by the village assessor during the full period of his long incumbency in office. He gave further testimony that gasoline and weight taxes had been received on the road and parking area maintained by the village of Elberta. He testified further that the blacktopping of the road to the recreation area had been at the expense of the village of Elberta.

"The defendant city of Frankfort calls attention to a plat made in 1868 and recorded in the office of the register of deeds in Benzie county in 1872. It is claimed that 'The basic outlines of the city of Frankfort and in 1955, as well as throughout the entire

80-year period between these dates' are identical with those indicated by this plat.

"In 1869 a plat was made of the area which was incorporated in 1894 as the village of South Frankfort and which in 1911 became known as Elberta. It is pointed out that this plat covers none of the disputed area, which, however, as hereinbefore related, did not become a part of Gilmore township until 1871.

"It has been further pointed out that the original channel forming an outlet and connection between Betsie lake and Lake Michigan followed a course north and west from Betsie lake to the big lake at a location somewhat to the northwest of the present channel which was later located and dredged out by the United States Government, thereby leaving a lesser area to the south and a greater area to the north of the channel in the fractional northeast quarter of section 28.

"In this connection it is noted that neither of the plaintiffs have ever and do not now lay claim to any part of section 28 which lies north of the present channel. Admittedly, this belongs to Frankfort.

"It is the further claim of the defendant city of Frankfort that as a matter of law, established first by territorial laws in 1821, followed by amendments in 1827, 1838, 1839, 1846, and 1850, proposed towns, before becoming incorporated, were required to record a true map or plat of the same. Emphasis is laid upon the language contained in the territorial law and retained in substance in the later legislative enactments to the effect that such maps 'shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended to be for public use, in the county in which such town lies, in trust to and for the use and purposes therein named, expressed or intended and for no other use or purposes whatever.'

"The defendant also urges that, notwithstanding that legislative enactments have subsequently provided procedural methods by which recorded plats

may be vacated, changed or modified, no such proceedings have ever been taken in Benzie county to change or modify the boundaries of Frankfort as expressed by the plat thereof.

"A claim is further made that the village of Frankfort accepted the entire area as offered and dedicated by the makers of the plat and that it did not and could not accept it in part or reject it in part. The argument is further made that in the later exercise of its governmental functions, by implication at least, the same extended to the disputed area as well as to all the nondisputed area within the limits of Frankfort.

"In addition to and in support of the theory thus expounded, the defendant offered testimony at the trial of the witness Kenneth Robinson, an old-time resident of the area whose father was an officer of the United States coast guard and who, with his family, occupied a coast guard station then located in the disputed area on the south side of either Betsie lake or the channel. He testified that in 1922 he registered for voting in Frankfort and that he had attended school there although he lived with his father's family on the south side. He further testified on cross-examination that he had also registered and voted in the township of Gilmore.

"The defense also offered the testimony of the chief of the volunteer fire department of Frankfort, who told of instances in 1948, 1950, and 1955 when the Frankfort fire department, without charge, had attended fires in the area of the Ann Arbor Railroad docks, although it did not render such service free generally throughout the area of either the village of Elberta or the township of Gilmore. In this connection it is noted, however, that such service was not confined solely to the disputed area but was rather a service to the Ann Arbor Railroad, whose property is located along the south side of Betsie lake both inside and outside the disputed area.

"The descriptions included in the legislative acts of 1885 under which Frankfort was incorporated

clearly state that the descriptions of property therein included are located in the township of Crystal Lake. The same do not purport to take in any land outside of that township and when the plat was made and acknowledged by the property owners and dedicators of the same in 1869 [1868?], the entire northeast fractional section 28 was a part of that township. However, when the same was recorded in 1872, that part of the section south of Betsie lake had become a part of Gilmore township by action of the board of supervisors of Benzie county in 1871. In other words, between the time the plat was made and recorded, Crystal Lake township lost the area in question to the township of Gilmore.

"It is further interesting to note that in 1872 the disputed area was assessed in the township of Gilmore and that part of section 28 lying north of the channel was assessed in Crystal Lake township. The fact that the area in question has never since appeared on the assessment roll in either the township of Crystal [Lake?] or city of Frankfort is a pretty clear indication that the assessing officers of the respective municipalities looked upon the disputed area as no part of Frankfort.

"It is a well-known principle of law that the dedication of a plat must be followed by a public acceptance by the municipality clothed with the power to do so and this must be done within a reasonable time. It cannot be said that the village of Frankfort was in any legal position to make an acceptance during the interim between 1872 when the plat was recorded and 1885 when it was first incorporated as a village. Neither did it include the same upon its tax rolls following its incorporation nor has it ever done so since.

"The plat shows no streets, alleys, roadways or area dedicated for public use and the proofs negative the laying out of any of the same by Frankfort since that time. On the other hand, with the consent of the Ann Arbor Railroad as land owner, the village of Elberta has maintained a short road to the recre-

ational part of the disputed area and has maintained and supervised the same.

"It thus appears that Frankfort has obviously in all prior years, until very recently at least, taken little or no interest in this little piece of property 'across the lake.' It may be that it has now developed that it would be to its advantage to have the 'floating population' who live in the boats and ferries that dock in the harbor on the south side of the lake in the vicinity of the disputed area listed upon its census rolls with whatever benefits, monetary or otherwise, that may accrue therefrom. This, however, constitutes no basis upon which either in law or equity the disputed issue should be settled.

"Plaintiffs' counsel have argued with propriety that the fixing of boundaries of a municipal corporation is a legislative function. (*Oakman* v. *Board of Supervisors of Wayne County,* 185 Mich 359; *Village of Kingsford* v. *Cudlip,* 258 Mich 144; *Presque Isle Prosecuting Attorney* v. *Rogers Township,* 313 Mich 1.) In this connection, it is not disputed that when the village of South Frankfort was organized by the board of supervisors of Benzie county in 1894 that it acted pursuant to the legislative authority of PA 1857, No 168, being section 2983 *et seq.,* Howell's Statutes Annotated (1882). Neither is it questioned that the disputed area was therein included within its incorporated limits as expressed in the following description: 'All that part of the township of Gilmore [,Benzie county, Michigan,] north of the east and west quarter section line of sections 34 and 35.' It thus appears that for more than half a century the boundaries of South Frankfort, now Elberta, have never been challenged by the municipality of Frankfort. It is also obvious to the court that when the village of Frankfort was organized, including only lands in Crystal Lake township, that it was intended to cover only that part of the northeast quarter of section 28 which was actually in Crystal Lake township and not any part thereof which was then located in Gilmore township.

To hold otherwise would be to read into the described incorporated area property in a township not named in the legislative act by which the village was incorporated.

"In harmony with the treatise contained in 49 Am Jur, States, Territories and Dependencies, § 19, pp 239 and 240, and the holdings of the United States supreme court in *Michigan* v. *Wisconsin,* 270 US 295 (46 S Ct 290, 70 L ed 595); and *Arkansas* v. *Tennessee,* 310 US 563 (60 S Ct 1026, 84 L ed 1362), where long acquiescence in the boundaries in dispute between sovereign States was held to be decisive of the issue, it seems logical and proper that the same principles should apply between the lesser municipalities involved in this controversy. The application of this doctrine brings about the inevitable conclusion, supported by a preponderance of the evidence, that the north boundary of Gilmore township, South Frankfort and Elberta, has been so long recognized and acquiesced in by the interested parties that it would be neither legal nor equitable to change it now. It therefore must be now held that no part of the northeast fractional quarter of section 28, township 26 north of range 16 west lying south of Betsie lake and the channel leading therefrom to Lake Michigan belongs to the city of Frankfort.

"In further support of this holding, attention is called to *Vermont* v. *New Hampshire,* 289 US 593, 616 (53 S Ct 708, 716, 717, 77 L ed 1392, 1403), in which the court stated:

"'The fact that, in the period of over a century following Vermont's admission to statehood this is the first well-authenticated instance of an effort on the part of the New Hampshire authorities to tax property located on the west bank of the river is of substantial weight in indicating acquiescence by New Hampshire in the boundary line restricting her jurisdiction to the river at the low-water mark.'

"A decree may be prepared in accordance with these findings. This being a matter of public interest, no costs should be awarded to either side."

The ultimate fact of this case is that the Benzie county board of supervisors acted first, with full and lasting legal effect upon corporate status of the peninsula. When the village of Frankfort was later incorporated, with enacted inclusion of the peninsula as a part of the village, the peninsula was no longer available for inclusion by such means. It was then a part of Gilmore township and, by operation of law and subsequently-pursued legal proceedings, became and is now a part of Elberta village.

The testimony in this case is not lengthy. The exhibits and municipal records definitely are so. We have carefully examined both in conjunction with the briefs of counsel and the chancellor's analysis thereof. Having done so, and finding ourselves in accord with the reasoning of and conclusions reached by the chancellor, we adopt his opinion as the opinion of this Court.

Affirmed. No costs.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and CARR, JJ., concurred.

BOYLES, J., did not sit.