# JUNE TERM, 1959.

### CITY OF FRANKFORT v. STATE TREASURER.

1. CENSUS—ALLOCATION OF STATE FUNDS—SUBSEQUENT EVENTS.
State funds, distributable to cities and villages, "according to the most recent state-wide Federal census preceding such distribution" are to be allocated according to such census, notwithstanding judicial determination, made subsequent to such census. that some of the population credited to the city in the census, were residents of adjoining village (PA 1951, No 51, §§ 10, 13, as last amended by PA 1957, No 262).

2. MANDAMUS—ALLOCATION OF STATE FUNDS—PAYMENT—LACHES.
City was not entitled to writ of mandamus as to funds properly allocable to it by State treasurer but which were allocated and *paid* to adjoining village upon judicial determination that residents of a certain area were residents of the village rather than city in whose population they had been included in most recent Federal decennial census, the statutory basis of allocation, because of laches, but allocated and *unpaid* funds are ordered paid to city on statutory basis of allocation (PA 1951, No 51, §§ 10, 13, as last amended by PA 1957, No 262).

3. COSTS—ALLOCATION OF STATE FUNDS—CENSUS.
No costs are allowed in original mandamus proceeding relative to allocation of State funds after census, which allocation followed later judicial determination that some of the population credited to plaintiff city were residents of adjoining village (PA 1951, No 51, §§ 10, 13, as last amended by PA 1957, No 262).

Original mandamus by City of Frankfort, a municipal corporation, against Sanford Brown, State

REFERENCES FOR POINTS IN HEADNOTES
[2] 34 Am Jur, Mandamus § 213 *et seq.*
[3] 35 Am Jur, Mandamus § 393.

Treasurer, James M. Hare, Secretary of State, John C. Mackie, State Highway Commissioner, other State officials and the Village of Elberta, a municipal corporation, to compel distribution of motor vehicle highway funds according to Federal census, and to compensate for sums paid on different basis to defendant village. Submitted February 3, 1959. (Calendar No. 47,894.) Writ, limited to future payments, granted June 5, 1959.

*Iverson & Allin* (*Edmund E. Shepherd* and *John L. Collins* of counsel), for plaintiff.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *John E. Campbell,* for defendants.

BLACK, J. *Village of Elberta* v. *City of Frankfort,* 347 Mich 173, is the prime cause of this litigation. There it was held that the peninsula separating Lake Michigan from Lake Betsie, in Benzie county, was a legal part of Elberta and not of Frankfort. While the present issue was not before him, the presiding chancellor made the following prescient note in his opinion (p 183 of report of *Elberta* v. *Frankfort*):

"It thus appears that Frankfort has obviously in all prior years, until very recently at least, taken little or no interest in this little piece of property 'across the lake.' It may be that it has now developed that it would be to its advantage to have the 'floating population' who live in the boats and ferries that dock in the harbor on the south side of the lake in the vicinity of the disputed area listed upon its census rolls with whatever benefits, monetary or otherwise, that may accrue therefrom. This, however, constitutes no basis upon which either in law or equity the disputed issue should be settled."

In this proceeding Frankfort seeks an original writ of mandamus commanding the defendant State officers to henceforth certify and distribute moneys from the motor vehicle highway fund according to Frankfort's population as determined by the Federal decennial census of 1950, and, also, to reimburse Frankfort for amounts which, according to her petition, she has been shortchanged (since October 1, 1956) by such officers in the making up and forwarding of "allocations" under sections 10 and 13 PA 1951, No 51, as amended (CLS 1956, §§ 247.660, 247.633; and as amended by PA 1957, No 262 [Stat Ann 1955 Cum Supp and Stat Ann 1958 Rev §§ 9.1097(10), 9.1097(13)]).

Prior to and during most of the year 1956 Frankfort received allocations from such fund on the basis of the 1950 census. By such census Frankfort was credited with a total population of 1,858, which number included as residents of Frankfort the "floating population" of the peninsula. Following decision in *Elberta,* the defendant duty-charged officers proceeded to reduce Frankfort's statutory allocation upon a new formula crediting Elberta with the "floating population" and discrediting Frankfort correspondingly. Frankfort, not liking this, insists that "the most recent state-wide Federal census" (that of 1950) governs and will continue to govern its rightful allocations under the cited act until the next "state-wide Federal census" is taken and recorded. The issue being one of apparent "state-wide" moment considering the developing pace of municipal changes of population and the various modes of fund-allocation that are provided by Constitution and statute, we granted (July 15, 1958) our order to show cause why the writ as prayed should not be issued.

Here again a court of last resort is faced with a question of law, in a law case, where the technical

legal right of the matter must prevail over a determined and otherwise decisive fact. The 1950 decennial census is the "most recent state-wide Federal census." We know now, when that census was taken, that the "floating population" of the peninsula should have been counted by the enumerators and the bureau in favor of Elberta and against Frankfort. That, however, was not done. The 1950 census determined at the time and determines now that Frankfort is entitled to continuity of allocation, under said sections 10 and 13, regardless of interim adjudication that the peninsula was and is a part of Elberta. The reason is that the statute makes no provision for relevant formula changes, between the taking of each decennial census, save only as specially excepted by said section 13, which exception has to do only with "newly incorporated municipalities." The statute controls and leaves no room for determination other than that the census of 1950, once it was returned and certified, fixed the formula-right of Frankfort to continued allocation until the next "state-wide Federal census" is taken (see 13 USC, § 141).

The attorney general, having considered the merits of the foregoing question in his brief, takes further position which appears to us as being well founded, in part at least. Under the statute in question certain of the defendant officers are obligated to make prompt dispositive payment of such "allocations." Right or wrong, they determined in this instance to make disposition according to their conception of the statutory formula and did so after (not before) Frankfort had been duly apprised of intention so to do. Frankfort, instead of moving at that time for judicial relief, contented herself with belated writing—to the defendant secretary of State, 16 months after the first and now questioned allocation to Elberta was made—of a "demand to immediately change the

allocation of State funds to the city of Frankfort" and "to make the necessary adjustment of funds so that Frankfort shall receive the funds which were improperly and illegally allocated to Elberta from October 1, 1956 to date." Her instant petition was not filed until June 18, 1958. Such delay warrants utilization, in part, of our rule that laches, of which a petitioner in mandamus has been found guilty, justifies withholding the applied-for writ, in whole or in part.

The attorney general says, in his brief:

"Plaintiff was well aware of the change in the allocation of the population figures by the bureau of census. They were well aware of the change in the distribution. Nowhere have they excused nor accounted for their delay in protesting the change. They would thus appear to have been guilty of laches. *McGregor* v. *Carney,* 271 Mich 278, and to have thus lost their right to obtain a writ of mandamus."

We agree, to the extent herein noted. To order, by way of mandamus, retroactive payment to Frankfort starting with allocation as of October 1, 1956, would amount to an inequitable result in that it would require compensatory readjustments of future allocations, and probable litigation with respect to same. We are constrained in these circumstances to issue the writ as prayed, subject to limitation that its effect shall be prospective, as of June 18, 1958, rather than October 1, 1956.

The writ, so limited, is granted. No costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH JJ., concurred.