RESIDENTS OF THE WEST SIDE OF WAYBURN STREET v CITY
OF DETROIT

Docket No. 49940. Submitted June 22, 1981, at Detroit.—Decided
September 9, 1981. Leave to appeal applied for.

The City of Detroit attempted to assess Detroit resident city
income taxes upon the residents of the west side of Wayburn
Street, asserting that the boundary between Detroit and Grosse
Pointe Park lay 200 feet east of the east line of Alter Road thus
placing the houses on the west side of Wayburn Street in the
City of Detroit. The residents of the west side of Wayburn
Street, asserting that the boundary lay 200 feet east of the
centerline of Alter Road and thus running through their back
yard making them residents of Grosse Pointe Park, contested
the resident income tax assessments before the local board of
review and the State Commissioner of Revenue as mandated by
statute. Both the local board of review and the State Commis-
sioner of Revenue denied relief to the residents. The residents
of the west side of Wayburn Street thereafter commenced an
action in Wayne Circuit Court pursuant to the City Income Tax
Act seeking a judicial determination of the matter. The City of
Grosse Pointe Park and the Grosse Point School Board inter-
vened as plaintiffs. Roland L. Olzark, J., determined that the
Legislature clearly and unambiguously placed the boundary
line 200 feet east of the centerline of Alter Road, that such
boundary line was controlling notwithstanding any acts of
acquiescence and, accordingly, that plaintiffs were residents of
Grosse Pointe Park and not subject to the Detroit resident
income tax. The City of Detroit appeals. *Held:*

The 1907 act of the Legislature placing the western boundary
of the Village of Grosse Pointe Park at 200 feet east of the
centerline of Alter Road fixed the boundary between Detroit

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions. §§ 39, 41.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions. § 62.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 39-43.

and the successor City of Grosse Pointe Park along that line. Neither the description of the boundary at the time of the incorporation in 1950 of the City of Grosse Pointe Park nor any acts of acquiescence could change the legislatively mandated boundary. Plaintiffs, accordingly, are not residents of the City of Detroit and are not subject to the Detroit resident income tax.

Affirmed.

1. Boundaries — Municipal Corporations — Legislative Function — Courts.

The fixing of municipal boundaries is a legislative function; the courts will not disturb a legislative determination by judicially extending boundaries to include territory outside the legislatively established line.

2. Boundaries — Municipal Corporations — Acquiescence.

The doctrine of acquiescence is inapplicable to municipal boundary disputes where a boundary line has been clearly fixed by the Legislature.

3. Boundaries — Municipal Corporations.

The boundary line between the City of Detroit and the City of Grosse Pointe Park is that fixed by the Legislature for the Village of Grosse Pointe Park; the boundary line described at the time of incorporation of the village into a city does not alter the boundary line fixed by the Legislature.

*Moll, Desenberg, Bayer & Behrendt* (by *Roger D. Young*), for the Residents of the West Side of Wayburn Street.

*Bodman, Longley & Dahling* (by *Herold M. Deason* and *James J. Walsh*), for the City of Grosse Pointe Park.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Douglas H. West*), for Grosse Pointe School Board.

*Sylvester Delaney,* Deputy Corporation Counsel, and *Robert F. Rhoades* and *Peter W. Macuga, II,* Assistants Corporation Counsel, for the City of Detroit.

Before: J. H. GILLIS, P.J., and BASHARA and K. N. SANBORN,* JJ.

J. H. GILLIS, P.J. The controversy herein centers on the location of the boundary line separating Grosse Pointe Park from the City of Detroit. Defendant, City of Detroit, claims the boundary line lies 200 feet east of the east line of Alter Road. This location places the line somewhere along the front porches of plaintiffs' homes. Plaintiffs claim the boundary lies 200 feet east of the center line of Alter Road, placing it in their backyards.

The controversy arose when, in 1971, the City of Detroit decided to assess resident income taxes against plaintiffs, retroactive to 1968. The plaintiffs contested the assessments to the local board of review and to the State Commissioner of Revenue and were denied relief. Suit was instituted in circuit court in 1974 pursuant to MCL 141.505; MSA 5.3194(5). The City of Grosse Pointe Park and the Grosse Pointe Board of Education were permitted to intervene as plaintiffs.

The trial court determined that the boundary set forth by the Legislature clearly and unambiguously placed the line 200 feet east of the center line of Alter Road. The trial court further held that this boundary was controlling notwithstanding any acts of acquiescence. Thus, plaintiffs were residents of Grosse Pointe Park and were not subject to the Detroit resident income tax. The City of Detroit appeals this determination.

Prior to 1907, the Village of Fairview separated the City of Detroit from the Township of Grosse Pointe. On March 27, 1907, the Legislature passed a bill providing for the annexation of a portion of the Village of Fairview to the City of Detroit. The

---

* Circuit judge, sitting on the Court on Appeals by assignment.

boundary was described as lying "west of a line two hundred feet east of Alter Road". 1907 LA 455 (hereinafter Act 455).

Approximately two months later, the Legislature enacted 1907 LA 534 (hereinafter Act 534) providing for the incorporation of the Village of Grosse Pointe Park. The western boundary of the village was described as "beginning at a point five hundred feet south and two hundred feet east of the center of Mack Road and Alter Road".

On October 15, 1907, the Michigan Supreme Court declared Act 455 unconstitutional because its title was not broad enough to cover its scope. *Village of Fairview v Detroit,* 150 Mich 1; 113 NW 368 (1907). Nine days later the Legislature again passed a bill providing for the annexation of a portion of the Village of Fairview to the City of Detroit. 1907 (Ex Sess) LA 1 (hereinafter Act 1). This act contained the same boundary description as that found in Act 455.

In 1909, the Legislature enacted the Home Rule Cities Act, 1909 PA 279; MCL 117.1 *et seq.;* MSA 5.2071 *et seq.,* which provides a procedure for the incorporation of cities and villages. The City of Grosse Pointe Park was incorporated in 1950 by the procedure set forth in the Home Rule Cities Act. The boundary was described as lying 200 feet east of the east line of Alter Road.

Defendant claims the various statements of the boundary line have rendered the location ambiguous and urges this Court to adopt the last statement of the boundary. Alternatively, defendant claims the doctrine of acquiescence should be employed to determine the location of the boundary even if its location is not ambiguous.

The fixing of municipal boundaries is a legislative function. *Presque Isle Prosecuting Attorney v*

*Rogers Twp,* 313 Mich 1, 9; 20 NW2d 787 (1945). The courts will not disturb a legislative determination in this regard. *Mitchell v City of Negaunee,* 113 Mich 359; 71 NW 646 (1897). Nor will the courts extend boundaries by judicial construction to include territory outside a legislatively established line. *People v Bouchard,* 82 Mich 156; 46 NW 232 (1890).

In the instant case, the first legislative statement of the boundary was made in Act 455. When Act 455 was held unconstitutional, Act 534 became the effective legislative statement of the boundary. Act 534 set the boundary 200 feet east of the center line of Alter Road. The subsequent statement of the boundary in Act 1 is not inconsistent with this statement of the boundary. Act 1, using the same language as Act 455, simply described the boundary as being 200 feet east of Alter Road. It did not state whether the distance should be measured from the center or the edge of Alter Road.

The procedure followed in 1950 by the City of Grosse Pointe Park was for the purpose of incorporating the city, not to change its boundaries nor to annex to Detroit the 33 feet of disputed area involved herein. Thus, despite the description of the boundary as being 200 feet east of the east line of Alter Road, the boundary remained as set forth in Act 534.

Defendant claims that plaintiffs have acquiesced in a boundary 200 feet east of the east line of Alter Road and that this acquiescence has fixed the boundary notwithstanding any legislative statement to the contrary. The doctrine of acquiescence provides that acquiescence in a boundary for the statutory period or after resolving a dispute as to its location fixes the boundary. *Corrigan v*

*Miller,* 96 Mich App 205; 292 NW2d 161 (1980), *Jackson v Deemar,* 373 Mich 22; 127 NW2d 856 (1964). Several jurisdictions have held that this doctrine does not apply to municipal boundary disputes wherein the boundary line has been clearly fixed by the Legislature. *Crescent City v Dodd,* 131 Cal App 153; 18 P2d 999 (1933), *Town of Brookline v Town of Newfane,* 126 Vt 179; 224 A2d 908 (1966), *Town of Stephens City v D M Zea,* 204 Va 88; 129 SE2d 14 (1963).

In urging this Court not to follow this line of cases defendant cites *Village of Elberta v City of Frankfort,* 347 Mich 173; 79 NW2d 616 (1956). The trial court in *Elberta* decided a municipal boundary dispute by applying the doctrine of acquiescence. The Michigan Supreme Court adopted the trial court's opinion as the opinion of the Court. However, the Supreme Court added to the opinion by stating what it considered to be the controlling fact:

"The ultimate fact of this case is that the Benzie county board of supervisors acted first, with full and lasting legal effect upon corporate status of the peninsula. When the village of Frankfort was later incorporated, with enacted inclusion of the peninsula as part of the village, the peninsula was no longer available for inclusion by such means. It was then a part of Gilmore township and, by operation of law and subsequently-pursued legal proceedings, became and is now a part of Elberta village." *Id.,* 185.

This statement indicates that the Court did not consider acquiescence relevant to the determination of the boundary. The Court considered the boundary set by the first statement of its location having legal effect. Subsequent actions could not alter this location.

The Supreme Court's resolution of the boundary dispute in *Elberta* indicates that Michigan follows those jurisdictions holding the doctrine of acquiescence inapplicable to municipal boundary disputes in which the boundary line has been clearly fixed by the Legislature. The boundary between Grosse Pointe Park and the City of Detroit was set by the Legislature in 1907 at 200 feet east of the center line of Alter Road. No subsequent acts of acquiescence could move that line. Plaintiffs are residents of Grosse Pointe Park.

Affirmed. No costs, a public question being involved.